### 4183. LEWIS v. OCEAN STEAMSHIP COMPANY et al.

1. The court erred in awarding a nonsuit. A carrier of passengers, by checking the baggage of a passenger who has purchased a ticket to a given point, becomes liable, by the contract, for the safe carriage of the baggage, in the same way and to the same extent as a carrier of goods. The baggage-check is in legal effect a bill of lading for the baggage.

2. A baggage-check given by a carrier to a passenger is prima facie evidence of the delivery of the baggage to the company, because it has so made it, and the check stands in the place of a bill of lading.

If it is not a contract, it is in the nature of a receipt, and is evidence of the ownership, delivery, and identity of the baggage. A passenger to whom the carrier delivers a baggage-check is not required to prove that the carrier actually received the baggage which the check symbolizes, until the carrier has rebutted the constructive delivery evidenced by the check, by proof that it never in fact received the baggage.

DECIDED JANUARY 30, 1913.

Action for damages; from city court of Savannah—Judge Davis Freeman. April 17, 1912.

The action was against the Ocean Steamship Company and the Seaboard Air-Line Railway. From the evidence it appears, that the plaintiff delivered to an agent of the White Star Transfer Company, on her arrival in New York, a baggage-check of the Erie Railroad Company, for her trunk, and directed that the trunk be delivered at the Ocean Steamship Company's pier in that city. The agent of the transfer company, on receiving this check, delivered to her, in exchange for it, a transfer check of his company. She paid for transportation for herself from New York to Woodbine, Georgia, over the lines of the Ocean Steamship Company and the Seaboard Air-Line Railway, and went to the Ocean Steamship Company's pier, and, before embarking on the steamship, delivered to the baggage agent of the steamship company her transfer check, receiving in exchange for it a baggage-check of that company. Before exchanging checks the baggage agent of the steamship company sent a porter to see if the trunk was at the pier, and the porter returned and said that he had found her trunk. Her trunk was not delivered to her afterwards. The last she saw of it was before she arrived in New York and received the transfer check. The railway agent at Woodbine tendered to her, as her trunk, a trunk not her own, but with a check attached to it which was a duplicate of the check received from the Ocean Steamship Company in New York in exchange for the transfer check. The petition alleges the delivery of her trunk to the transfer company, with instruction to deliver it to the Ocean Steamship Company, and alleges that the transfer company delivered it to the Ocean Steamship Company, and that she then and there received from the steamship company its check for transportation of her trunk and its contents from New York to Woodbine, Georgia. It is alleged that the loss of the trunk was due to the negligence of one or both of the defendants. The court granted a nonsuit, and the plaintiff excepted.

*R. D. Meader, George W. Owens,* for plaintiff.

*Anderson, Cann & Cann, H. W. Johnson,* for defendants.

RUSSELL, J. In our opinion the learned trial judge erred in awarding a nonsuit and dismissing the plaintiff's case. The case is virtually controlled by the ruling of this court in *Atlanta Baggage & Cab Co.* v. *Mizo,* 4 *Ga. App.* 407 (61 S. E. 844), although there is some difference between the cases in immaterial features. The defendants contend that the nonsuit was proper because the instant case is controlled by the ruling of the Supreme Court in *Bridges* v. *Southern Ry. Co.,* 137 *Ga.* 107 (72 S. E. 892). As this court is bound to follow the rulings of the Supreme Court, as precedents, we will first consider this contention.

An examination of the opinion in the *Bridges* case, supra, shows that the carrier was held to be not liable, not merely because there was no direct evidence that the plaintiff's trunk was ever in its possession, but because it is perfectly evident from the record that the trunk was never in its possession. In other words, the plaintiff himself proved (what we think a carrier who has issued and delivered a check for baggage should prove by way of defense) that no check which could properly purport to represent the baggage was in fact ever in his possession. Necessarily, in this state of facts, the ruling of the Supreme Court, that the evidence was insufficient to support a verdict for the plaintiff, was correct. In the *Bridges* case (to quote from the statement of facts in the opinion) the plaintiff testified that "he purchased a round-trip ticket from Hawkinsville, Georgia, to Richmond, Virginia, to return by way of Norfolk, Virginia, by rail. The defendant's agent at Hawkinsville gave the plaintiff a check for his trunk to Richmond. He received his trunk at Richmond, and left there for Norfolk over the Old Dominion Steamship Company's line, receiving from that company a check for his trunk from Richmond to Norfolk. The Southern Railway Company's line did not run into Norfolk. Upon his arrival at Norfolk he received from the transfer company, in return for the steamship company's check, a transfer check. The trunk could not be found, and the transfer company then delivered to the plaintiff a check purporting to be a Southern Railway Company's check for the transportation of the trunk from Norfolk to Hawkinsville. Upon his return to the latter place the plaintiff presented the last-mentioned check to the local agent of the de-

fendant company at that place, and demanded his trunk. The trunk could not be found there, and the agent took the check and endeavored to trace the trunk, but failed to do so, and subsequently returned the check to the plaintiff. There was no evidence that the transfer company at Norfolk was the agent of the defendant company, which denied that the trunk was ever delivered to it or its agent after the plaintiff had received it at Richmond." As the plaintiff Bridges himself delivered his trunk at Richmond, not to the Southern Railway Company or its agent, but to an agent of the Old Dominion Steamship Company, and used that route in going to Norfolk, and as the Southern Railway Company's line did not run into Norfolk, there was not only no evidence, circumstantial or otherwise, that the trunk went into the possession of the Southern Railway Company, but, on the contrary, every presumption of law and every reasonable inference from the facts supports the conclusion that the trunk remained in the possession of the Old Dominion Steamship Company, or had been lost by that company. When the transfer company could not find the trunk, Bridges accepted from its agent, who was not an agent of the Southern Railway Company, a check purporting to be a Southern Railway Company baggage-check. Certainly in that case the Supreme Court could well hold that the plaintiff could not recover, if for no other reason than that he accepted this check from one he did not know to be an agent of the carrier whom he sought to bind thereby, and at a time when he knew, or should have known, that the carrier whom he sought to bind by the check, then being delivered to him as a symbol of his trunk, was not in possession of the baggage which it was thereby contracting to deliver; and this, too, without inquiring whether the transfer company, in assuming to act as agent of the Southern Railway Company, or even if it was the agent of the latter, was doing an act beyond the scope of its authority. It is doubtful if the carrier would be liable upon a check for baggage delivered by one of its duly authorized agents to a passenger who knew that the baggage was not in the possession of the carrier; but certainly a carrier would not be bound in such a case by the delivery of what purported to be its check by one who had no authority whatever to make a contract in its behalf.

The present case differs from the *Bridges* case in several important particulars. In the first place, in the present case the

baggage-check upon which the plaintiff bases her action was delivered to her by an agent of the defendants. This is not disputed. In the next place, so far from her knowing, or having the right to believe (as Bridges had the right to believe) that the carrier was not, as a matter of fact, in possession of the trunk at the time its agent handed to her the check, she had every right to assume that her trunk was in the possession of the steamship company; becausewhen she presented her transfer check, the porter, in the presence of the steamship company's agent, took it for the purpose of locating the trunk, and he returned with the statement that he had found it; and thereupon, after surrender of the transfer check, the defendants' baggage-check was delivered to her. Furthermore, there is no evidence in this case (as there is in the *Bridges* case) which would tend to show that the trunk was lost before it could have come into the possession of the defendants. In the present case there is no presumption, one way or the other, upon this subject, for the plaintiff traveled the route over which her baggage was checked; and it is no more to be presumed that the transfer company made a mistake in rechecking the trunk, for the purpose of conveying it from the depot of the Erie Railroad to the pier of the Ocean Steamship Company, than that the agent of the defendants made a mistake in rechecking which resulted in the shipment of a trunk other than that of the plaintiff. The undisputed evidence of the plaintiff in this case establishes that she was a passenger of the defendants, and the payment of her fare included payment for the carriage of her baggage. The carrier delivered her a check as evidence of its undertaking to deliver the baggage, which it symbolized, at the destination to which she had purchased her ticket. She delivered to the defendant steamship company a symbol of the baggage, the identity of which it had an opportunity of fixing before the delivery to the plaintiff of its own baggage-check. Her baggage was not delivered to her, and the value of the contents of the lost trunk was established by testimony which was not disputed. Upon its discovery of the loss the carrier did not return the transfer check which it had received from the plaintiff, nor did it offer to return the check until the trial, more than two years after the trunk was lost.

On this state of facts the question which arises is: Upon whom shall be cast the burden of establishing that the check which the

defendant carrier delivered to the plaintiff did not in fact represent her trunk,—the passenger who, by the act of the carrier in retaining her transfer check, has been prevented from proceeding against the transfer company, or the carrier who was paid and undertook to carry the passenger's baggage, and who had every facility, by means of the transfer check, of tracing and ascertaining upon whom liability for the loss of the trunk should be placed? We concede, as insisted by the learned counsel for the defendants, that the cause is not one of connecting carriers; but, according to the evidence, the White Star Transfer Company was apparently a common carrier of baggage in the sense in which that term is defined in the case of the *Atlanta Baggage & Cab Co.* v. *Mizo*, supra; and as there is no evidence to the effect that it did not have the trunk, the case would seem to be similar as to the facts, and at least as strong as to this point, as that of *Rome Railroad Co.* v. *Wimberly*, 75 *Ga.* 316, in which the Rome Railroad Company was held liable for the value of a trunk although no check was issued, because an employee of that company, after agreeing to place the plaintiff's trunk upon the train of the East Tennessee, Virginia & Georgia Railroad, and after he had received from the plaintiff her check, failed to do so, and the trunk was lost. Authorities to the effect that baggage-checks are evidence of delivery of baggage to the railroad company issuing them are so numerous that we shall cite but a few.

The main contention of the defendants is that the plaintiff's case failed for lack of proof that the trunk which the defendant steamship company received, and for which it gave her a check, was her trunk. The contention of the defendants is that they delivered to her a trunk to which was attached a duplicate of her baggage-check, and that the burden was upon her of proving that the trunk delivered to her was not the one represented by the transfer check, as well as that they actually received her trunk. We agree that a passenger who seeks to recover the value of lost baggage must show that it was delivered to the carrier of whom the recovery is sought. But as relates to baggage, the contract of carriage is such that the possession of the trunk-check by the passenger is prima facie evidence authorizing the plaintiff to recover the proved value of the lost baggage; and the burden is on the carrier to rebut this by evidence disproving the right of the plain-

tiff to the check, or proving that no baggage was received or lost, or contesting the identity of the baggage claimed to be lost. It is ruled in the case of Dill *v.* South Carolina Railroad Co., 7 Richardson, 158 (62 Am. Dec. 407), that railway companies are, in respect to baggage of their passengers, common carriers, and liable for the same, unless excused by the act of God or of the enemies of the country; citing Story on Bailments, 509; Camden & Amboy Railroad Co. *v.* Burke, 13 Wend. 611 (28 Am. Dec. 488). Judge O'Neall, delivering the opinion of the Supreme Court of South Carolina, then proceeds to say: "It is necessary, however, to fix them with this liability, that it should be shown that the plaintiff's baggage was delivered to them. Their check, found in his possession, is evidence of that fact. They themselves have made it, and it stands in the place of a bill of lading." Upon the question of the identity of the particular article delivered the court then rules that the burden is on the defendant to show what was actually delivered, if there is dispute between the parties as to what was delivered. The opinion continues: "What was delivered under it is the difficulty. Was it a trunk, or some other thing? The plaintiff claims that it was a trunk delivered; this is the usual means of a traveler's conveyance of his baggage. Search was made for such an article at the plaintiff's request. This was, I think, all the plaintiff could show, and the burden was on the defendants to show that he did not deliver to them a trunk, but some other articles." The plaintiff in the Dill case did claim that he had lost a trunk, which the check represented, and the railroad company, at his request, did search for it. Under rulings of the South Carolina court upon evidence, he was not permitted to testify as a witness. If the identity of the article lost could be proved by the check, and the plaintiff's claim for the property, and the circumstance that the railroad company which issued the check searched for the article, and that a trunk and no other property was represented by the check, certainly where a plaintiff claims that the trunk delivered to her is not her trunk, and she is in possession of a check which the circumstances indicate was issued as a bill of lading for her trunk, and the carrier searches for it in pursuance of her request, this will afford presumptive proof that the check in her possession evidences a bill of lading for the trunk she claims to have lost.

The precise question has been several times ruled on in other jurisdictions. In Hickox *v.* Naugatuck Railroad Co., 31 Conn. 281 (83 Am. Dec. 143), it was held that the baggage-check is in the nature of a receipt, and is evidence of the delivery, ownership, and identity of the baggage; and this ruling was adopted in Ahlbeck *v.* St. Paul Ry. Co., 39 Minn. 424, in which it was held that evidence tending to prove that the plaintiff came by rail from Port Huron, where his trunk, containing his baggage, was checked (and where he last saw it), by way of Chicago, and at the latter place was given another check therefor, by the Chicago & North-western Railway Company, which he exchanged at the Union Depot in St. Paul for a local check of the St. Paul, Minneapolis & Manitoba Railway Company to Grove City, where the defendant tendered him a trunk not his own, but to which was attached a duplicate of the check last received by him, made a prima facie case for the plaintiff. It is true that the Ahlbeck case is one of connecting carriers, and that the transfer company in the present case is not a connecting carrier, but the liability of the carrier in the Ahlbeck case is not made to depend upon the fact that the case is one of connecting carriers; for that point is not referred to in the opinion. The case does not turn upon the joint liability of the defendant as one of several connecting carriers (although it appears from the headnote that the defendant was, as a matter of fact, one of several carriers which connected), but upon the principle ruled in the Hickox case, supra, that a baggage-check is in the nature of a receipt, and for that reason is prima facie evidence at least of the delivery of the baggage belonging to the holder of the baggage-check.

The fact that the transfer company is not a connecting carrier, as related to the defendants in this case, is of no relevance, if the several receipts for the trunk, evidenced by the check which the plaintiff received, are prima facie evidence of the delivery to the defendants of the plaintiff's trunk. The transfer company, as a carrier, owes the same duty to the public, with reference to the carriage of baggage, as a steamboat or a railroad company. If the first check received by the plaintiff was prima facie evidence that the first carrier which transported the baggage received the plaintiff's trunk, then the transfer company's receipt as a carrier (whether a connecting carrier or not) affords presumptive

evidence that it received the trunk evidenced by the first check. And the check which the steamship company gave to the plaintiff in exchange for the check she already had from the transfer company was, prima facie, to be presumed to have reference to the trunk originally delivered. The presumption is not one which rests upon the liability of one connecting carrier to another for a loss (the liability for which they can fix upon the proper party), but it is one which arises from the improbability that any carrier will acknowledge the receipt of property which he has not received, or different from that actually received. It is to be presumed, whether the carriers are connecting carriers or not, that the first carrier will not give a receipt for any trunk other than the one delivered by the passenger to whom its check or bill of lading for baggage is delivered, and will not place its duplicate check upon any different baggage. It is to be presumed that a carrier (though only a transfer company, but yet liable for failure to comply with its contracts, and owing the same legal duties to deliver as other carriers) will not accept from the first carrier a trunk other than that which it has contracted to transfer; and this would necessarily be the trunk delivered by the passenger to the first carrier. And it is to be presumed that the steamship company, having issued its receipt to the passenger for a trunk, identified as above stated, will not forward any other than that trunk.

The presumption to which we have referred is no stronger in the case of connecting carriers than if they were carriers which had jointly transported the baggage with interdependent relationship. It is a presumption of the same nature as that which rests upon the supposition that one does not give a receipt for money which he has not in fact received. The presumption in each case can be rebutted. In the case of the receipt for money, the prima facie presumption may be rebutted by proof that the amount mentioned in the receipt was not paid; and in a case such as that now before us the presumption may be rebutted by proof that one of the carriers did not in fact receive the baggage in question. But if the principle announced by many authorities—that the check is a bill of lading for the baggage—is sound, then the possession of the check, in addition to the proof that the baggage was not received by the holder of the check, must make a prima facie case, which the defendant is required to rebut. See Davis *v.* Michigan South-

ern Railroad Co., 22 Ill. 278 (74 Am. Dec. 152), in which it was held that a carrier must be held to have received baggage, and be liable for its loss, where it exchanges the baggage-checks of a connecting line for its own and does not give immediate notice to the passenger of its inability to find the baggage. This case, too, is one of connecting carriers, yet it is apparent that that fact did not influence the shaping of the opinion of the court. The court says upon this point: "The delivery of a check to a passenger is intended to relieve him from all care and superintendence of his baggage while on his journey, and devolves such care upon the agents of each of the several roads over which it passes, and must be considered as prima facie evidence of the delivery of the baggage." It appears that in that case the checks were exchanged before the train reached Toledo; and, in our opinion, this demonstrates that the liability of the carrier was not dependent upon the fact that it was one of several connecting carriers, for the court says: "On the exchange of checks before reaching Toledo, if the baggage-master could not find the trunk and carpet-bag, which, it seems, were connected together and marked with one check, on the Cleveland cars, he should have given immediate notice to the owner from whom he received the check; not having done so, the company must be held to have received the trunk and bag, and to be liable for the loss. . . Were it not for this exchange of checks the defendant would not be liable. The remedy would be against the Cleveland & Toledo Railroad Company." See, also, Chicago Ry. *v.* Clayton, 78 Ill. 617-618.

In the case of *Atlanta Baggage & Cab Co.* v. *Mizo,* supra, we held that the baggage company, as a carrier, was liable because as such it took the passenger's check under a contract to get the trunk and deliver it to her, and failed to perform its contract or return the check; the carrier being held to be liable without regard to the fact that it was not a connecting carrier. As was said in that case, any other rule than the one here announced would relieve common carriers from all responsibility for baggage received by them, and would either impose upon passengers great inconvenience or subject them to the danger of losing their baggage without remedy.          *Judgment reversed.*