[No. 15538. Department One. January 15, 1920.]

PACIFIC FRUIT & PRODUCE COMPANY, *Appellant,* v. NORTHERN PACIFIC RAILWAY COMPANY, *Respondent.*[1]

CARRIERS (8-1)—OF GOODS—REFUSAL TO ACCEPT—LIABILITY. It is primarily a carrier's duty to accept a shipment and furnish suitable equipment under a requested optional service, published in its tariff, but it is not liable if its failure was due to an unprecedented shortage of cars and conditions which it could not reasonably anticipate or avoid.

CARRIERS (7)—CONTRACTS—TARIFFS. An interstate carrier can enter into no contract of transportation not expressly authorized in its published tariffs.

SAME (8-1)—REFUSAL TO ACCEPT GOODS—PLEADING—DEFENSES. In a shipper's action for damages to apples frozen in transit, the carrier's answer states a good defense, where it appears that its published tariffs provided an optional service, one at shipper's risk and the other at a higher rate at the risk of the company, which latter

[1] Reported in 186 Pac. 852.

16—109 WASH.

required refrigerator cars, that, upon plaintiff's demand for such service, the company used due diligence to obtain refrigerator cars, but from unprecedented conditions was unable to do so, whereupon plaintiff elected to accept the other service, which called for box cars, stoves, and a shipper's attendant, and signed a contract for such service in which he assumed all risks, and that the shipper's loss was due to failure to properly prepare the car and to the negligence of his agent attending the shipment.

Appeal from a judgment of the superior court for Yakima county, Taylor, J., entered April 30, 1919, dismissing an action for damages, upon overruling a demurrer to the answer and the refusal of the plaintiff to plead further. Affirmed.

*Sydney Livesey,* for appellant.

*J. W. Quick, Geo. T. Reid, L. B. da Ponte,* and *Rigg & Venables,* for respondent.

MITCHELL, J.—This action was disposed of by the superior court in favor of the defendant, upon the refusal of the plaintiff to further plead after the entry of an order overruling a general demurrer to affirmative defenses to the amended complaint. The plaintiff has appealed.

The amended complaint alleges, in effect, that appellant is a corporation engaged in the fruit and produce business at Yakima, Washington, and on December 4, 1916, delivered to the respondent, a common carrier, at Yakima, Washington, a carload of apples to be transported to Wichita, Kansas. That, at the time of delivery, respondent had in effect, governing such shipments, a tariff which provided for two kinds of service, and for which different charges were made. That one kind of service was known as "option one," and was upon condition that the shipper assume responsibility for loss or damages occasioned by frost, freezing or overheating; and the other kind was known as "option two," which provided that the carrier as-

sumed the responsibility for loss or damage occa-
sioned by frost, freezing or overheating. That the
charge for option two service was $24 in excess of the
other kind, between the places mentioned. That, at
the time of delivering the carload of apples, appellant
demanded that it be permitted to enter into option two
contract, which it was ready, willing and able to per-
form, but that respondent refused to enter into such
contract and refused to transport the shipment under
any contract other than option one, which appellant
was compelled to, and did, accept. That respondent,
disregarding its duty as a common carrier and knowing
the perishability of the shipment, refused to furnish
a suitable car for the service required, and that re-
spondent knew the car provided was unsuitable for
safely carrying the apples in the event there was
severe cold weather and freezing temperature to which
the apples would be subjected. That, in the course of
transportation, the apples were frost-bitten and frozen,
causing the damages complained of in this action.
That a claim for the amount of the damages was pre-
sented to the respondent, which refused to pay the
same, or any part thereof.

In the first affirmative defense — the only one we
deem it necessary to consider—the respondent alleged,
in effect, that it is a common carrier engaged in inter-
state commerce. That, at the date of receiving the
shipment in question, and at all times since Novem-
ber 8, 1915, it had in effect a tariff providing for two
kinds of service for the transportation of perishable
freight, one called option one and the other option
two. That, under the terms of option one contract,
the shipper assumes liability for loss due to frost or
freezing, but if, in the shipper's judgment, it is nec-
essary to use lining, false flooring, or to install stoves,
he might do so at his own expense, provide fuel (being

allowed a deduction from the weight of the car to offset
the weight of such equipment), and a caretaker would
be transported by the carrier to take care of the ship-
ment, and the caretaker and stove would be returned
free of charge. That, under the terms of option two
contract, the carrier assumes liability for loss due to
frost or freezing, but in such case there is a charge
over that made for service under option one contract.
That, under its published tariff, it could lawfully trans-
port the apples only under one or the other of said two
contracts. That, where the shipper desired to ship
under option two, it was the duty of respondent to pro-
vide a refrigerator car, which was the only car con-
structed so that apples could be safely transported in
transcontinental movement in the month of December,
and the only kind of car in which apples could be
moved, or ever have been moved, under option two
contract—which fact was well known to both parties
at all times—and that respondent never had under-
taken the responsibility entailed by option two contract
except for shipments moving in refrigerator cars.
That, prior to December, 1916, it had made ample pro-
vision for moving the apple crop of the Yakima coun-
try, and at that time it owned enough refrigerator cars
to answer all demands it could or did reasonably an-
ticipate, and except for an unavoidable shortage of
them would have been able to furnish one to appellant
for its shipment. That, in the month of September,
1916, there was a heavy east-bound movement of soft
fruits and other perishable freight from Yakima that
required refrigerator cars furnished by respondent for
the safe transportation of such fruit destined to points
beyond its line. That it was unsafe and impracticable
to transfer such freight to the cars of connecting car-
riers, and, in addition, respondent was a party to duly
published through joint rates that necessitated its re-

frigerator cars going through to destination, and further, that the connecting carriers did not have refrigerator cars into which the fruit could have been transferred. That, in prior years, its refrigerator cars had always been returned in ample time to remove the Yakima apple crop during the usual shipping period from October to the following January, but in December, 1916, its supply of refrigerator cars was for the first time detained by connecting carriers, and although respondent made every effort to get them returned [including necessary applications to the interstate commerce commission, as shown by its car supply investigation decision reported in 42 I. C. C. R. 657, made a part of the answer], it was unable to do so, and that, on or about December 4, 1916, there were so detained 2,333 of its refrigerator cars. That, in the fall and as late as December, 1916, there was an unusual demand for refrigerator cars to transport apples, potatoes and other perishable goods, because never before had there been any considerable movement east of potatoes from the Yakima section; but in that year, due to the failure of the potato crop in the middle west and elsewhere, there was a heavy east-bound movement from Yakima and vicinity, requiring the use of 1,000 refrigerator cars, which respondent was compelled to supply, all of which would otherwise have been available for moving the apple crop that fall and winter, as respondent had reasonably expected. That, according to its custom, respondent made diligent investigation in advance that year to ascertain the size of the apple crop, but that withal the crop greatly exceeded its estimate, and that, because of the lateness of the season and delay in picking and packing, the apple crop was offered for shipment so much later than theretofore as to cause such an unprecedented accumulation of the crop and demand for refrigerator

cars for shipment between November 15th and December 15th that respondent, notwithstanding its care and precautions, but because of its unavoidable shortage of cars, was unable to furnish refrigerator cars for the movement in one month of a volume of such business that had always extended over a period of six weeks or two months. That, because of such situation and without any fault of respondent, it could not promptly furnish a refrigerator car to appellant under option two contract, but that, as it was legally bound to do, it offered to furnish a box car for the transportation of apples under option one contract; whereupon appellant elected to use a box car and entered into option one contract, and so shipped its apples, and appellant undertook to properly prepare said cars to contain apples, and installed a stove and sent a caretaker in charge, well understanding respondent's inability to supply a refrigerator car at that time, and well knowing that a box car was not suitable for the transportation of apples on such a trip at that time, and with full knowledge of such facts shipped its apples under option one contract, paid the rate of freight provided for such shipments, prepared the car as it saw fit, and assumed all risk of loss or damage to the shipment from frost, freezing and overheating, as provided by the contract; and that, if said apples were damaged by frost and freezing, as alleged, it was due to a risk assumed by appellant and to the negligence of appellant in failing to properly floor, line and prepare said car, and to the carelessness of appellant's agent in charge of the shipment in failing to give it the necessary care and attention.

Primarily, it was the duty of respondent to accept the shipment under its ordinary common law liability for any injury or damage thereto in transit expressed in option two contract, which was the service requested

by the appellant. Further, it is a carrier's duty to furnish suitable equipment, and if freight be damaged in consequence of its failure in this particular, it is liable to the shipper therefor. Applying these well settled principles, it is clear a cause of action is stated in the amended complaint; for respondent not only refused to enter into a contract by the terms of which it would become liable for damages, according to the common law, its tariff and the acts of Congress regulating interstate commerce, but it also refused to furnish a car which would protect the shipment from such damage.

The only question, therefore, is, Does the affirmative defense state facts sufficient to save respondent from the liability shown in the amended complaint? A carrier in interstate commerce can enter into no contract of transportation for which there is not express authority in its filed and published tariffs. *Texas & Pacific R. Co. v. American Tie & Timber Co.*, 234 U. S. 138.

The duly filed and published tariff applicable in this case provided two kinds of service for moving perishable freight, such as apples, at the choice of the shipper; the one under option one contract, at the risk of the shipper; the other under option two contract, at the carrier's risk. It is alleged in the answer that the refrigerator car was the only car constructed so that apples could be safely transported between the points mentioned in the month of December, and the only kind of a car in which apples could be moved, or ever have been moved, under the terms of option two contract, which fact was well known to appellant. It is further alleged that, prior to December, 1916, respondent had made ample provision for moving the apple crop of the Yakima section and, at that time, owned refrigerator cars sufficient to respond to all demands

it could, or did, reasonably anticipate, and was prevented from supplying one to appellant only because of an unlooked-for, unsual and unavoidable car shortage, together with an irregular harvesting and congested shipping conditions of the apple crop. All of these facts, set out in detail, are, of course, admitted by the demurrer. As shown by the report of the interstate commerce commission in its car supply investigation ending in December, 1916: "The present conditions of car distribution throughout the United States have no parallel in our history." 42 I. C. C. Rep. 657. That investigation was, in part, at the instance of this respondent, which at that time, as alleged in its affirmative defense, was suffering from a shortage of 2,333 refrigerator cars. It seems to be the well settled rule that, while railroad companies are bound to furnish suitable cars for their usual and ordinary traffic, they are not liable for failure to furnish such cars in times of car shortage occasioned by unprecedented and unforeseen demand for such cars, by abnormal prolonged car detentions on connecting lines, or other extraordinary causes and circumstances which could not have been foreseen and against which it was in reason impossible to provide. *Pennsylvania R. Co. v. Puritan Coal Mining Co.,* 237 U. S. 121; *Houston & Texas Cent. R. Co. v. Mayes,* 201 U. S. 321; *Interstate Commerce Commission v. Illinois Cent. R. Co.,* 215 U. S. 452; 4 R. C. L., § 150, page 674; 10 C. J., § 67, page 73.

Abundant facts are alleged in the answer to bring the respondent within the rule of exemption from liability for its failure to supply appellant with a refrigerator car—the only kind of car suitable for the service under option two contract—on December 4, 1916.

Calling attention to a portion of supplement No. 7 to the tariff, which is as follows:

"1. (a) Under the provisions of this section of Tariff the terms 'Perishable Freight' will include:

"Any article requiring protection from cold, either by use of refrigerator or other insulated car, by artificial heat, or by both, including . . . Fruits, Fresh, . . ."

appellant argues that, because it speaks of the use of refrigerator or other insulated cars, by artificial heat, or both, it so modifies or controls the general tariff as to compel the common law liability of the carrier, regardless of cars, so that, in the event respondent was unable to supply a refrigerator car, it nevertheless was bound to make the shipment in a box car at its own risk. The argument is not justified. The whole of supplement 7, as set out in the pleadings, shows it still preserves the rights and obligations of the shipper and carrier under the two kinds of contracts, option one and option two, as to that feature involved in this controversy; and besides, the language quoted and relied on by appellant shows upon its face it is intended to enumerate what shall be included in the term "perishable freight," and is easily separable from the subject-matter of the terms of the contracts with reference to the manner in which such freight shall be transported.

Judgment affirmed.

HOLCOMB, C. J., MAIN, MACKINTOSH, and TOLMAN, JJ., concur.