13287

ANDERSON v. ATLANTIC COAST LINE R. CO.

(161 S. E., 523)

*Messrs. W. A. Townes, Douglas McKay* and *Herbert E. Giles,* for appellant,

*Messrs. Williams, Croft & Busbee,* for respondent, cite:

December 30, 1931.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE JOHN I. COSGROVE.

This is an action between shipper and carrier for damages growing out of the loss of a portion of a shipment of household furniture.

On August 28, 1925, the shipper delivered to the carrier at Clearwater, Fla., 25 boxes of household goods, weighing 2,820 pounds, for transportation to Graniteville, S. C. The bill of lading was issued in triplicate; the shipping order and the memorandum copy being carbon copies. The original was delivered to the shipper, and the shipping order, signed by him, and memorandum copy retained by the carrier.

The shipment was delivered to the shipper at Graniteville, and two boxes weighing 500 pounds, according to his evidence, proved to be lost. Upon the carrier's refusal of the claim of loss filed by the shipper, this action was brought.

The carrier, while admitting responsibility for any loss, contended that there was an agreed valuation of $10 per hundred pounds, pursuant to its published tariff, upon which the rate had been computed and collected, and that, under the applicable federal statutes, it was liable for no more than such agreed value. The shipper denied that the shipment was a valued shipment, and maintained that he was entitled to recover the actual value of the lost articles.

The testimony on the issue thus made was in conflict, and the trial Court submitted it to the jury for determination. The jury found a verdict in favor of the shipper for $250, the actual value of the lost property as found by them.

Upon the trial, the shipper offered in evidence the original bill of lading, while the carrier introduced the shipping order and the memorandum copy. On the face of the shipping order and memorandum copy appeared the notation: $10.00 per cwt." This notation, however, did not appear on the orignal, although the shipping order and memorandum copy had been made as carbon copies thereof. The shipper testified that the notation did not appear on the shipping order when he signed it at Clearwater, and that it must have been put on afterwards. He further testified that, when

he delivered the shipment to the carrier, he stated that he did not want a released shipment, and would "rather pay the high rate and get the goods there." He was formerly a freight agent for the Southern Railway Company, was familiar with the fact that there were different rates for varying agreed values, but was not familiar with the rates from Clearwater to Graniteville, had made no investigation of them, and had simply accepted and paid the rate demanded by the carrier. No evidence was offered by the carrier tending to contradict respondent's testimony that the notation was not upon the shipping order when he signed it.

The burden is upon the carrier seeking to avail itself of limitation of liability for loss of or damage to a shipment to prove the facts upon which the validity of the limitation is based, including, not only the requisite establishment, pursuant to order of the Interstate Commerce Commission, and filing of a tariff containing alternative rates based upon different agreed valuations, but also the agreement of the shipper in writing to the limited value. *Kristianson v. American Ry. Express Co.,* 122 S. C., 528, 115 S. E., 899.

Under the evidence herein, the trial Court committed no error in submitting to the jury the question whether or not the valuation appeared on the shipping order when signed by him. The jury found against the carrier's contention, and there was ample evidence to sustain their finding.

The carrier further contends, however, that, even if the notation did not appear on the shipping order when signed by the shipper, he had constructive notice from its filed tariff, containing alternative rates for different agreed values, that the rate paid by him was upon the basis of an agreed valuation of $10 per hundred pounds, and that he was bound by such valuation by reason of the rate so paid. Otherwise, it contends, the door would be opened to unlawful discriminations and rebating, in violation of the letter and spirit of the federal statutes.

It is settled law that, on interstate shipments, the shipper is as much obligated to pay the correct freight charge as the carrier is to collect it; and that the carrier is not only entitled, but also required, to recover the amount of any undercharge upon such shipments. *Aldrich v. R. Co.,* 95 S. C., 427, 79 S. E., 316, and cases cited.

A carrier's action therefor cannot be defeated by proof that the shipper relied and acted upon an erroneous rate quoted by the carrier to him, nor is it liable for damages caused the shipper resulting from his reliance upon an incorrect quotation. *Williams v. Express Co.,* 118 S. C., 121, 110 S. E., 125; *Aldrich v. R. Co., supra.*

It does not follow, however, because the shipper is charged with constructive knowledge of the rate which he must pay for the transportation of his shipment as desired, that he is equally charged with knowledge that the amount of freight collected from him, by reason of being based upon a valuation different from that requested by him, impliedly binds him to a valuation, having no relation to the actual value of the shipment, which he not only did not actually agree to, but which, on the contrary, he expressly refused to agree to.

The federal act, 49 USCA, § 20, par. (11), expressly provides that a common carrier shall be liable for the actual amount of the loss sustained by a shipper; any provision in the bill of lading or rule or regulation to the contrary being declared void. As an exception, however, the act provides that, upon authorization of the commission, and upon the filing of tariffs establishing alternative rates based upon different agreed values, and upon an agreement in writing by the shipper to the limited value, a carrier may charge a less rate and limit its liability to an agreed value. To hold that the mere quotation and collection of the lower rate charges the shipper with constructive knowledge that the carrier has limited its liability to a certain value would permit the carrier, by its own act, to take advantage of the

exception to its absolute liability for the full actual loss, without an agreement in writing by the shipper, and, in fact, without regard to his wishes and over his express objection.

It cannot be disputed that the carrier, upon proof of the facts found by the jury here to have been established, would have been entitled to recover from the shipper the undercharge in freight collected, by showing that it had carried this shipment without limitation of liability, and had collected only the freight applicable to an agreed valuation which had not in fact been made. This being true, it necessarily follows that the shipper's recovery is not limited, by the mere collection of the rate paid, to the valuation corresponding to such rate, and that the carrier's right is, not to set up the limitation of liability corresponding to the rate erroneously collected by it as a defense to the shipper's suit, but to collect from the shipper the difference between the freight collcted and the freight, which should have been collected. It is this with which the published tariff charged the shipper with constructive knowledge and bound him to pay.

Accordingly, it is our opinion that the issues herein were properly submitted to the jury by the trial Judge, and that the verdict for the actual value of the lost article is supported by the evidence.

Judgment affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER and CARTER concur.

MR. JUSTICE COTHRAN did not participate on account of illness.