## 32117. NASHVILLE, CHATTANOOGA & ST. LOUIS RY. *v.* HAM.

DECIDED DECEMBER 2, 1948. ADHERED TO ON REHEARING DECEMBER 17, 1948.

404

*Tye, Thomson, Tye and Edmondson,* for plaintiff in error.
*George W. Willingham, Julian E. Gortatowsky,* contra.

MacIntyre, P. J. ■ The defendant in error has made a motion to dismiss the writ of error on the grounds that the written notice of the time and place at which the brief of evidence is to be presented to the trial judge for his approval, required by Ga. L., 1946, pp. 726, 744, § 19 (Code, Ann. Supp., § 24-3364), to be given opposing counsel, was not given him, and that he did not waive the notice in writing. It appears from the record that the plaintiff in error filed a motion for new trial on January 12, 1948, the date of the original trial; and the trial court set January 29, 1948, as the date for a hearing on the motion, granting leave to the movant to file the brief of evidence and perfect the motion at any time prior to the final hearing. While no order of continuance is set forth in the record, the trial judge certified in the bill of exceptions that the hearing on the motion had been regularly continued until May 14, 1948. The brief of evidence was presented and approved on that date, and the hearing on the motion for new trial, at which the motion was overruled, was had on that date also. It nowhere appears from the record that counsel for the defendant in error objected to the approval of the brief of evidence at the time of the hearing on the motion for a new trial, or at any other time prior to the filing of her motion to dismiss.

We have diligently searched the cases arising from this court and from the Supreme Court since the passage of the new rules of court in 1946, but have been unable to find any decision construing the point of procedure here raised. We have therefore reached the conclusion that the question is one of first impression, and, as a consequence, have proceeded with great caution in order that we may ascertain the true intention and meaning of the law in this regard, and that we may place the proper construction thereon.

" 'All statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it. They are therefore to be construed in connec-

tion with and in harmony with the existing law, and as a part of a general and uniform system of jurisprudence, and their meaning and effect is to be determined in connection, not only with the common law and the Constitution, but also with reference to other statutes and decisions of the courts.'" *Botts v. Southeastern Pipe-Line Co.*, 190 *Ga.* 689, 700 (10 S. E. 2d, 375). See also *McDougald v. Dougherty*, 14 *Ga.* 674 (5), where it was said: "A statute must be construed with reference to the whole system of which it forms a part." The new rule must, therefore, be considered in the light of the prior existing law in the system of which it forms a part—that is, appellate procedure.

Code § 6-805 provides: "Where the judge has finally passed on the merits of a motion for a new trial and the parties have raised no question as to the sufficiency of the approval of the grounds of such motion, or of the approval of the brief of evidence, or of the filing of such motion or brief, or of the jurisdiction of the judge to entertain the motion at the time he did, if the parties acquiesced in his entertaining it at that time, no question as to these matters shall be entertained by the reviewing courts unless first raised and insisted on before the trial judge." See, in this regard, *Heath v. Philpot*, 165 *Ga.* 844 (1) (142 S. E. 283); *Turner v. Warren*, 193 *Ga.* 455 (1) (18 S. E. 2d, 865); *Marietta Fertilizer Co. v. Gary*, 22 *Ga. App.* 604 (2) (96 S. E. 711); *McLendon v. Richardson*, 53 *Ga. App.* 471 (1) (186 S. E. 469), in all of which cases, together with many others decided prior to the new rule, the court followed the Code provision above quoted. It may also be said that it is the general rule that, in order to preserve a point of error for the consideration of an appellate court, counsel must take exception to the alleged error at the earliest possible opportunity in the progress of the case by a proper objection made a part of the record. It nowhere appears that this was done in the instant case.

"A substantial compliance with any requirement of the Code, or laws amendatory thereof, especially on the part of public officers, shall be deemed and held sufficient, and no proceeding shall be declared void for want of such compliance, unless expressly so provided by the enactment." Code, § 102-102. Still further, the presumption of law is that a judicial officer, or court,

has acted legally within his proper sphere. § 38-114. We therefore think that, where the record does not affirmatively show that the judge below has acted illegally by approving the brief of evidence without first being satisfied that notice of the time and place at which the brief of evidence was to be presented to him for his approval has been given to opposing counsel, the presumption is that the court was satisfied as to the requisite notice having been given and acted legally in approving the brief; and where the record does affirmatively show the absence of the requisite notice, counsel must have raised the objection at the first opportunity—at the hearing on the motion for a new trial—and have his objection made a part of the record, for if he fails to do so a consideration of such error, if any, is not to be entertained by the reviewing court.

The ruling in *Bartlett* v. *Sockwell*, 75 *Ga. App.* 591 (44 S. E. 2d, 141), construing rule 12 of the rules of the Civil Court of Fulton County, is not in conflict with the construction here made. It appears that in that case the objection to the approval of the brief of evidence without the requisite notice having been given to opposing counsel was made at the first opportunity—at the hearing on an appeal from the judgment of the trial court in a case involving less than $300 before the Appellate Division of the Civil Court of Fulton County.

The motion to dismiss the writ of error is therefore overruled.

■ The petition alleges that the defendant N. C. & St. L. Railway Company is a railroad corporation; that "on or about March 30, 1945, the defendant, *as part of its business as a common carrier*, entered into a contract with the plaintiff whereby the defendant, in consideration of the purchase of a first-class railway ticket from Tullahoma, Tennessee to Kansas City, Missouri, and payment therefor in cash by the plaintiff, agreed to transport a certain Gladstone bag and its contents, the property of the plaintiff, from Tullahoma, Tennessee, to Kansas City, Missouri"; that pursuant to said contract, the plaintiff delivered the Gladstone bag and its contents, which were of a then value of $940.50, to the defendant; and that on or about April 3, 1945, the plaintiff demanded redelivery of said bag and its contents from the defendant, and the defendant did then and

has since that time failed and refused to redeliver the same, but has converted the same to its own use and benefit. (Italics ours.) The defendant contends that the plaintiff failed to prove the express contract as laid in the pleadings, and that this variance was fatal because the plaintiff, having alleged an express contract, must recover on proof of a breach of this contract or fail to recover at all.

There is no necessity for the court to delve again into the many and varied ramifications of the duty of a common carrier to accept the goods of a member of the public for shipment. Suffice it to say that it is uniformly the rule that a contract for the first-class passage of a person, entered into with a common carrier, includes as an incident thereof the carriage of the baggage of the passenger necessary and incident to his journey, subject to such reasonable rules and regulations as the carrier may establish in accordance with the law. *Atlanta Terminal Co.* v. *American Baggage &c. Co.,* 125 *Ga.* 677 (2) (54 S. E. 711); 13 C. J. S. 1683, § 862.

"At common law a common carrier is bound to convey the goods of any person offering to pay his hire, unless the carriage be already full, or the risks sought to be imposed upon him extraordinary, or unless the goods be of a sort which he can not convey or is not in the habit of conveying. A common carrier was an insurer of the goods entrusted to his care, and was responsible for every injury sustained by them occasioned by any means whatever, except only the act of God and the king's enemies. . . For the failure to safely transport and deliver goods an action might be brought against a carrier, either in assumpsit or in case. In assumpsit the action was for the breach of the contract to carry, and an allegation of the failure to perform was considered a sufficient averment of its breach. When the action was brought in case, it was founded on the breach of the public duty. The duty to receive and safely transport goods was originally implied from the custom of the realm. In the evolution of time it became incorporated in the common law of England, and an action ex delicto for the breach of the duty imposed by law was very generally pursued to recover damages for goods lost or damaged while in the possession of the carrier.

The main difference between the form of pleading in assumpsit and case was that in the former the liability was based upon a breach of contract, while in the latter it was for a breach of duty. In the forms of pleading approved by Mr. Chitty (2 Chit. Pl. (11 Am. ed.) *356, *652) the allegations of breach of contract and breach of duty were substantially in the same words, and were to the effect that the carrier so negligently conducted himself that through his carelessness the goods entrusted to his care became lost to the plaintiff." *Louisville & N. R. Co.* v. *Warfield,* 129 *Ga.* 473, 475 (59 S. E. 234). See 2 Chitty on Pleading, (16th Am. ed.), p. 99, § 9, and also p. 487, where it is said: "In tort the declaration does not charge a promise, but after stating the delivery to defendant as a common carrier, alleges the breach of duty as in contract. The forms in contract may, therefore, be readily applied to tort." The rules thus stated make it clear that there is little, if any, difference between an action for breach of duty in transporting goods and an action for the breach of a *common-law* contract for the carriage of *goods.*

Assuming however, but not deciding, that the cause of action in the instant case was for the breach of an express contract, rather than for a breach of the defendant's public duty, the contention of the defendant is not well taken; for the plaintiff introduced evidence tending to prove that she purchased a first-class passage from Tullahoma to Kansas City, that she delivered her baggage to the carrier, and that the carrier received the baggage at Tullahoma and agreed to transport it to Kansas City. Therefore, there was evidence sufficient to support an allegation of an express contract by the defendant to so transport the plaintiff's baggage, if such was in fact the nature of the allegation, for the parties are presumed to know the law and to contract in contemplation thereof.

The defendant contends that the trial judge predicated his judgment upon a finding that the defendant declined and refused to enter into a contract with the plaintiff under which the plaintiff's baggage would be checked under the higher rate; and that, since the petition was laid upon a special express contract, it was error for the court to allow a recovery upon purported

proof of a breach of the defendant carrier's public duty to check the plaintiff's bag under its higher tariff rate.

With the contention that the judgment was error in this respect we cannot agree. As will presently appear, the only effect of the "purported proof of a breach of the defendant carrier's public duty to check the plaintiff's bag under its higher tariff rate" was to enable the plaintiff to urge that she did not enter into a limited-liability contract of carriage, and to assert the usual common-law contract of carriage with its consequent common-law liability. Such would not be proof of an action in quantum meruit, when the petition alleged an express contract within the rule of *Finley* v. *Coastal Chevrolet Corp.*, 64 *Ga. App.* 489 (13 S. E. 2d, 683) ; nor would it be the allowance in evidence of parol testimony to vary the terms of a written contract.

The contention that there was a fatal variance of the proof from the pleadings is not meritorious.

■ While we here express no direct opinion as to the validity of the carrier's tariff regulation with reference to jewelry which is included in baggage, preliminary to the consideration of the general grounds of the motion for a new trial, reference is made to Hartzberg *v.* N. Y. Central R. Co., 181 Misc. 129 (41 N. Y. S. 2d, 345) (certiorari denied 328 U. S. 849, 66 Sup. Ct. 1121, 90 L. ed. 1622). See also Bush *v.* Beauchamp, 132 Ark. 582 (201 S. W. 828) ; Missouri Pac. R. Co. *v.* Pugh, 157 Ark. 383 (248 S. W. 897) ; *Southern Ry. Co.* v. *Dinkins*, 139 *Ga.* 332, 335 (77 S. E. 147, 43 L. R. A. (N.S.) 806) ; Ill. Centr. R. Co. *v.* Fontaine, 217 Ky. 211 (289 S. W. 263, 52 A. L. R. 1064).

Controversies concerning the rights and liabilities of the parties arising out of interstate shipments are Federal questions, and State courts must follow the applicable Federal statute and decisions. *Southern Ry. Co.* v. *Porter*, 76 *Ga. App.* 1 (44 S. E. 2d, 688), et cit.; *Argo* v. *Southeastern Greyhound Lines*, 72 *Ga. App.* 309 (1) (33 S. E. 2d, 730) ; Boston & M. R. Co. *v.* Hooker, 233 U. S. 97 (34 Sup. Ct. 526, 58 L. ed. 868, L. R. A. 1915B, 450, Ann. Cas. 1915D, 593). 49 U. S. C. A. §̇ 6(1), provides in part as follows: "Every common carrier subject to the provisions of this chapter shall file with the commission created by this

chapter and print and keep open to public inspection schedules showing all the rates, fares and charges for transportation . . on its . . route. . . The schedules . . shall plainly state . . all other charges . . and any rules or regulations which in any wise change, affect, or determine any part or the aggregate of such aforesaid rates, fares, and charges, or the value of the service rendered to the passenger, shipper, or consignee." Section 20(11) provides: "Any common carrier . . subject to the provisions of this chapter receiving property for transportation [in interstate commerce] . . shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property . . and no contract, receipt, rule, regulation, or other limitation of any character whatsoever, shall exempt such common carrier . . from the liability hereby imposed; and any such common carrier . . so receiving property for transportation [in interstate commerce] . . shall be liable to the lawful holder of said receipt, or bill of lading or to any party entitled to recover thereon, whether such receipt or bill of lading has been issued or not, for the full actual loss, damage, or injury to such property caused by it or by any such common carrier . . to which such property may be delivered . . notwithstanding any limitation of liability or limitation of amount of recovery or representation or agreement as to value in any such receipt or bill of lading, or in any contract, rule, regulation, or in any tariff filed with the Interstate Commerce Commission; and any such limitation, without respect to the manner or form in which it is sought to be made is declared to be unlawful and void:

. . *Provided, however,* That the provisions hereof respecting liability for full actual loss, damage, or injury, notwithstanding any limitation of liability or recovery or representation or agreement or release as to value, and declaring any such limitation to be unlawful and void, shall not apply, first, to baggage carried on passenger trains . .; second, to property, except ordinary livestock, received for transportation concerning which the carrier shall have been or shall be expressly authorized or required by order of the Interstate Commerce Commission to establish and maintain rates dependent upon the val-

ue declared in writing by the shipper or agreed upon in writing as the released value of the property, in which case such declaration or agreement shall have no other effect than to limit liability and recovery to an amount not exceeding the value so declared or released, and shall not, so far as relates to values, be held to be a violation of section 10 of this chapter [defining a violation of the chapter to be a crime]; and any tariff schedule which may be filed with the commission pursuant to such order shall contain specific reference thereto and may establish rates varying with the value so declared or agreed upon; and the commission is empowered to make such order in cases where rates dependent upon and varying with declared or agreed values would, in its opinion, be just and reasonable under the circumstances and conditions surrounding the transportation."

It is well settled in the Federal law that the passenger or shipper or his agent, and the carrier and its agents, are each conclusively presumed to know the rates on file with the Interstate Commerce Commission, and that they are held to know that the reduced rates given are based upon a reduced valuation placed upon the property transported; and that, where the passenger or shipper delivers goods to the carrier and receives the benefit of the reduced rate, the provisions of the tariff limiting liability to a released valuation automatically attach and enter into and form a part of the contract of shipment, and the passenger or shipper, having obtained the lower rate and benefited thereby, may not thereafter introduce evidence aliunde the contract of shipment to show that he did not know that the shipment was made upon a reduced evaluation, even though the carrier did not actually call his attention to the alternative provisions of the tariff or make inquiry as to the value of the goods to be transported. Boston & M. R. Co. v. Hooker, supra; Amer. Ry. Expr. Co. v. Daniel, 269 U. S. 40 (46 Sup. Ct. 15, 70 L. ed. 154); Amer. Ry. Expr. v. Lindenburg, 260 U. S. 584 (43 Sup. Ct. 206, 67 L. ed. 414); Galveston, H. & S. A. Ry. Co. v. Woodbury, 254 U. S. 357 (41 Sup. Ct. 114, 65 L. ed. 301); Atchison, T. & S. F. Ry. Co. v. Robinson, 233 U. S. 173 (34 Sup. Ct. 556, 58 L. ed. 901); Great Northern Ry. Co. v. O'Connor, 232 U. S. 508 (34 Sup. Ct. 380, 58 L. ed. 703); Kansas City S. R. Co. v. Carl,

227 U. S. 639 (33 Sup. Ct. 391, 57 L. ed. 314); Adams Expr. Co. v. Croninger, 226 U. S. 491 (33 Sup. Ct. 148, 57 L. ed. 314, 44 L. R. A. (N.S.) 257); Cau v. Texas & P. R. Co., 194 U. S. 427 (24 Sup. Ct. 663, 48 L. ed. 1053); *Argo* v. *Southeastern Greyhound Lines,* supra; White v. Southern R. Co., 208 S. C. 319 (38 S. E. 2d, 111, 165 A. L. R. 988); Gulf, Colo. & S. F. Ry. Co. v. McCandless (Tex. Civ. App.) 190 S. W. 2d, 185. "In many cases, from the decision in Hart v. Pennsylvania R. Co., 112 U. S. 331, 5 Sup. Ct. 151, 28 L. ed. 717, decided in 1884, to Boston & M. R. Co. v. Piper, 246 U. S. 439, 38 Sup. Ct. R. 354, 62 L. ed. 820, Ann. Cas. 1918E, 469, decided in 1918, it has been declared to be the settled Federal law that, if a common carrier gives to a shipper the choice of two rates, the lower of them conditioned upon his agreeing to a stipulated valuation of his property in cases of loss, even by the carrier's negligence, if the shipper makes such a choice, understandingly and freely, and names his valuation, he cannot thereafter recover more than the value which he thus places upon his property. As a matter of legal distinction, estoppel is made the basis of this ruling—that, having accepted the benefit of the lower rate, in common honesty the shipper may not repudiate the conditions on which it was obtained—but the rule and the effect of it are clearly established. . . This court has consistently held the law to be that it is against public policy to permit a common carrier to limit its common-law liability by contracting for exemption from the consequences of its own negligence or that of its servants . ., and valuation agreements have been sustained only on principles of estoppel, and in carefully restricted cases where choice of rates' was given—where 'the rate was tied to the release.' . . Thus, this valuation rule, where choice is given to and accepted by a shipper, is in effect, an exception to the common-law rule of liability of common carriers, and the latter rule remains in full effect as to all cases not falling within the scope of such exception." Union Pac. R. Co. v. Burke, 255 U. S. 317, 321 (41 Sup. Ct. 283, 65 L. ed. 656).

Thus, where the tariff schedules of the carrier on file with the Interstate Commerce Commission provide for the acceptance of goods for shipment under limited liability only, and contain

no alternative rate with corresponding increased—common-law—liability, such schedule, rate, or regulation is invalid and the shipper is not bound by its provisions. See also *Southern Ry. Co.* v. *Porter,* supra. Nor is the shipper estopped to claim the higher common-law evaluation where the shipping clerk or agent of the carrier denies to the shipper the opportunity to make a choice of rates. Toledo, S. L. & W. R. Co. v. Milner, 62 Ind. App. 208 (110 N. E. 756); Cleveland, C. C. & S. L. Ry. Co. v. Hollowell, 172 Ind. 466 (88 N. E. 680); Anderson v. Atlantic C. L. R. Co., 163 S. C. 350 (161 S. E. 523); Chicago, R. I. & G. R. Co. v. Core, Tex. Civ. App. (176 S. W. 778); Lang v. Shofner (Tex. Civ. App) 175 S. W. 2d, 701; Bingham v. San Pedro, L. A. & S. L. R. Co., 39 Utah 400 (117 Pac. 606); and see Pacific Fruit & Produce Co. v. Northern Pac. Ry. Co., 109 Wash. 481 (186 Pac. 852, 10 A. L. R. 337). In the *Lang* case, supra, the shipper demanded that the goods be "insured" for their full value, and the limitation of liability was held invalid because the carrier's agent falsely stated that there was only one rate and valuation under which shipment could be made. Of course it is not essential that the carrier actually extend to the shipper by words, or call his attention to, the alternative rate and valuation provisions of its tariff, and it is sufficient that the carrier has the alternative rates on file, *if* the shipper would have been given a choice if he demanded it; but the question remains whether in fact the shipper had an opportunity to so choose his rate and the valuation under which he wished the goods to be shipped. Cau v. Texas & P. R. Co., supra. The purpose and intent of the Interstate Commerce Act is that of equality, hence both the shipper and the carrier must take notice of the rates on file with the Interstate Commerce Commission applicable to the shipment, and no other rates may lawfully be charged or demanded by either party—to avoid a fraud upon the carrier by the shipper who conceals the value of the goods in order to obtain a lower rate, the shipper is bound by the limited valuation and can claim no greater recovery in case of loss, if he in fact was given the opportunity to choose the rate and corresponding valuation under which he wishes to ship.

See Boston & M. R. Co. *v.* Hooker, supra; Ill. Centr. R. Co. *v.* Fontaine, supra.

The plaintiff in error admits the rule as thus stated in regard to freight. However, it contends that such is not the law as to baggage of a passenger, arguing that the rule is different, because in the case of freight a bill of lading which incorporates therein the value of the goods shipped is issued, whereas in the case of baggage a mere "check" is sufficient (Boston & M. R. Co. v. Hooker, supra), no further declaration of value in writing being necessary to establish the limitation of liability on baggage than the acceptance of the baggage check subject to the provisions of the baggage tariff on file with the Interstate Commerce Commission; and because in the case of baggage the burden is upon the passenger checking baggage to take affirmative action and declare an excess evaluation in order to avoid the automatic attachment of the limitation of $100 to the baggage checked.

While it is true that the provisions of the filed tariff become incorporated into the baggage check without any further statement of value in writing (See the Hooker case, supra), and that the "check" is the only receipt or bill of lading in writing required by law in case of baggage, whereas in the case of freight the terms of the statute (49 U. S. C. A., § 20 (11)) make it an essential to the validity of the limitation in value to incorporate a statement of the value of the property in the terms of the bill of lading—we can not agree that the rule in regard to baggage is therefore different from that in regard to freight in so far as the obligations of the carrier to offer an *actual* choice of rates and to transport the baggage under its common-law liability are concerned. Under the common law of the United States, a common carrier is obligated to carry, as baggage, such amount of articles properly constituting baggage as is reasonably necessary to the comfort and convenience of the passenger on this journey, measured by the amount of baggage which is reasonable and necessary for persons in like station in life to take with them on a like journey. New York Central & H. Co. *v.* Fraloff, 100 U. S. 24 (25 L. ed. 531); The Hannibal &c. R. Co. *v.* Swift, 12 Wall. 262 (20 L. ed. 423); Saunders *v.* So. Ry. Co., 62

C. C. A. 523 (128 Fed. 15); *Dibble* v. *Brown & Harris*, 12 *Ga.* 217 (56 Am. D. 460); *Kates* v. *Atlanta Baggage Co.*, 107 *Ga.* 636, 637 (34 S. E. 372, 46 L. R. A. 431); *Hart* v. *Atlanta Terminal Co.*, 128 *Ga.* 754, 767 (58 S. E. 452); *Ford* v. *A. C. L. R. Co.*, 8 *Ga. App.* 295 (68 S. E. 1072); *Lewis* v. *Ocean Steamship Co.*, 12 *Ga. App.* 191, 197 (76 S. E. 1073). And, as to such baggage, the carrier is an insurer under the common law, just as it is of freight, in the absence of loss by act of God or the public enemy; and in the absence of an agreement freely and fairly entered into by the passenger limiting the value of such baggage in return for a reduced rate of carriage, the carrier is liable for the full actual value of the baggage.

After a diligent and thorough search of the decisions of both the Federal and the State courts, we have found no case drawing the distinction urged—and we have been referred to none by citation; but, to the contrary, in Saunders *v.* Sou. Ry. Co., supra, it was said at page 19: "A common carrier may contract for a reasonable limitation of its common-law liability for loss or damage to either freight or baggage not resulting from its own negligence or that of its servants. The general liability . . is that of an insurer but this common-law obligation may be limited by an agreement, fair and reasonable, between the carrier and passenger against all loss and damage not resulting from the negligence of the carrier and his servants. . . The rule with respect to baggage is not different from that in relation to freight." In Robidoux *v.* Chicago & N. W. Ry. Co., 113 Nebr. 682 (204 N. W. 870, 41 A. L. R. 446), it was held that interstate regulation of rates for the transportation of shipments, based on agreed or fixed values under bills of lading, and of amounts recoverable from carriers for losses, may apply under similar circumstances to checked baggage belonging to interstate passengers; and in Ill. Centr. R. Co. *v.* Fontaine, supra, it was said: "It was . . held [in the Hooker case, supra] . . that the effect of permitting the carrier to file regulations as to passenger's baggage limiting its liability except on payment of specified rates does not change the common-law liability of the carrier as a shipper of freight."

The cases of Galveston, H. & S. A. Ry. Co. *v.* Woodbury, supra, and Culbreth *v.* Martin, 179 N. C. 678 (103 S. E. 374),

cited by the plaintiff in error, do not hold to the contrary, as contended by it; but they merely state that 49 U. S. C. A., § 20 (11), supra, excepts baggage from its provisions for full liability under the same conditions as freight is excepted from its provisions.

The carrier in the trial of the instant case introduced no evidence to the effect, nor does it make any contention, that the amount of articles carried by Mrs. Ham on her trip was unreasonable or unfitted to the contemplated journey, or that such articles were not such as were reasonably convenient and necessary to her comfort and well-being on the journey; nor does it make any contention that any of such articles were not such as properly constituted baggage. The only question raised for the consideration of this court is whether there is any evidence to sustain a finding that the carrier denied to the passenger the opportunity to check her baggage under the common-law-liability rate—a finding that the passenger, under the circumstances appearing in the record, was not estopped to assert a claim for recovery of more than the limited liability set forth in the carrier's tariff schedules by her having accepted, in an agreement freely and fairly made, the benefits of the free-carriage provisions.

As a matter of law, the offer of the carrier to accept the baggage under the limited or the common-law liability at the appropriate rate was of notice to the passenger, and the carrier was not required to call any further attention or notice to the same or to take notice that the baggage itself from its outward appearance was obviously of greater value than $100, which was allowed to be transported free with a first-class passage; and the passenger would be estopped by the terms of her contract to claim a greater value if she freely and fairly accepted the offer of free carriage of the baggage without attempting to accept the alternative offer to carry under the common-law liability. However, if as a matter of fact the baggage was tendered to the carrier to be shipped under its common-law liability, and the carrier by its agent refused to accept it except under its limited liability, the passenger would not be estopped to urge that she did not enter into a contract for shipment under the

limited liability, and to assert the usual common-law contract of carriage with its consequent liability. If the carrier denied a choice of rates to the passenger, it cannot urge the estoppel, which is the basis of the limitation of liability and which the carrier in the instant case is seeking to urge.

"The jury were the sole judges of the facts, and it was their privilege to draw their conclusions from the entire evidence or from any part of it." *Sutton* v. *State*, 123 *Ga.* 125 (51 S. E. 316). " 'A jury in arriving at a conclusion upon disputed issues of fact may believe a part of the testimony of a witness or witnesses, and reject another part thereof, it being their duty to ascertain the truth of the case from the opinion they entertain of all the evidence submitted for their consideration.' " *Reaves* v. *Columbus Elec. &c. Co.*, 32 *Ga. App.* 140 (4) (122 S. E. 824). " 'The law allows [the trial judge] to refuse or grant new trials in the exercise of a legal discretion, but it does not give this court any discretion in the matter. It can only grant new trials where errors of law have been committed, or when the trial judge has abused his discretion in refusing a new trial.' " *Jackson* v. *State*, 56 *Ga. App.* 392 (1) (192 S. E. 630). "This court has repeatedly ruled that, in the absence of legal error, it has no jurisdiction to interfere with a verdict supported by some evidence, although the verdict was against the preponderance of the evidence." *Wilson* v. *Barnard*, 10 *Ga. App.* 98, 99 (8) (72 S. E. 943). See also *Davis* v. *Skinner*, 16 *Ga. App.* 693 (85 S. E. 970). "In passing upon the motion for a new trial, that view of the evidence which is most favorable to the [plaintiff] must be taken, for every presumption and every inference is in favor of the verdict. . . *Vandeviere* v. *State*, 58 *Ga. App.* 18 (197 S. E. 338)." *Donahoo* v. *Goldin*, 61 *Ga. App.* 841, 846 (7 S. E. 2d, 820). The rule is no different whether the verdict is rendered by a jury or by the trial court, sitting as both judge and jury.

The carrier in the instant case introduced no evidence to contradict the testimony of the husband of the plaintiff—which we have previously set out in the statement of facts hereto—as to the transaction which took place when he checked the baggage in issue with the agent of the carrier. Considering this evidence in the light most favorable to the plaintiff, we think that the judge,

sitting as a jury, was authorized to find that the plaintiff's husband asked the carrier's baggage agent "for something to sign showing the value or the contents of the bag" or "to show that my baggage is worth more than the average baggage," to which the baggage agent replied, "This is a country railroad; we don't do that way"; and to find that this answer was the equivalent of a denial of a choice of rates to the passenger upon a request to check the bags at their full value. Taking every presumption and every inference in favor of the finding of the trial judge sitting without the intervention of a jury, the finding was authorized by the evidence. *Brown* v. *Matthews*, 79 *Ga.* 1, 8 (4 S. E. 13).

The court did not err in overruling the motion for a new trial.

*Judgment affirmed. Gardner and Townsend, JJ., concur.*

ON REHEARING

MacIntyre, P. J. After a careful reconsideration of the evidence, we cannot say that the finding of the trial judge, sitting without a jury, was not authorized by the evidence. All matters in the motion for a rehearing and in the briefs of counsel in reference thereto having been thoroughly considered, the judgment is adhered to.

*Judgment adhered to. Gardner and Townsend, JJ., concur.*