JAMES J. ARAJE, Respondent, *v.* THE PENNSYLVANIA
RAILROAD COMPANY, Appellant.

(Argued June 5, 1929; decided July 11, 1929.)

*John Vance Hewitt, Harold L. Allen* and *Bernard Sobol* for appellant. Any agreement between plaintiff and defendant's baggage agent to accept and transport, in interstate commerce, a trunk containing only merchandise intended for sale, is unenforcible. (*Northern Pacific Ry. Co.* v. *Washington, etc.*, 222 U. S. 370; *Southern Ry. Co.* v. *Reid*, 222 U. S. 424; *Southern Ry. Co.* v. *Reid & Beam*, 222 U. S. 444; *Adams Express Co.* v. *Croninger*, 226 U. S. 491; *Chicago, St. Paul, etc., Ry. Co.* v. *Latta*, 226 U. S. 519; *Chicago, Burlington & Quincy Ry. Co.* v. *Miller*, 226 U. S. 513; *Jewelers' Protective . Union* v. *Pennsylvania R. R. Co.*, 36 I. C. C. 71; *Burke* v. *Union Pacific R. R. Co.*, 226 N. Y. 534; 225 U. S. 317; *Pennsylvania R. R. Co.* v. *Titus*, 216 N. Y. 17; *Boston & Maine R. R. Co.* v. *Hooker*, 233 U. S. 97.)

*David Goldstein, Jonah J. Goldstein, Thomas G. Frost* and *Joseph W. Ferris* for respondent. The defendant was liable to plaintiff under the acts of Congress and the

baggage regulations formulated pursuant to authority granted by the Interstate Commerce Commission to all interstate carriers of passengers. ( *United States* v. *Milwaukee Refrigerator Transit Co.*, 142 Fed. Rep. 247; *Armour Packing Co.* v. *U. S.*, 209 U. S. 56; *Interstate Commerce Commission* v. *Chicago & Great Western Ry. Co.*, 141 Fed. Rep. 1003; 209 U. S. 108; *Penn. R. R. Co.* v. *International Coal Co.*, 230 U. S. 184; *New Haven R. R. Co.* v. *Interstate Commerce Comm.*, 200 U. S. 367; *New York Central R. R. Co.* v. *Goldberg*, 250 U. S. 85; *Pond-Decker Lumber Co.* v. *Spencer*, 86 Fed. Rep. 846; *New York Central R. R. Co.* v. *Fontaine*, 217 Ky. 211.)

CARDOZO, Ch. J. Plaintiff, a passenger on the defendant's railroad, checked a trunk as baggage on an interstate journey. The trunk was lost or stolen. The defendant maintains that it is relieved of liability because the trunk should have been transported not as baggage, but as freight.

Tariff schedules filed by the defendant pursuant to the statute define baggage for the purposes of the tariff as either " personal " or " sample." " Personal baggage consists of wearing apparel, toilet articles and similar effects in actual use and necessary and appropriate for the wear, use, comfort and convenience of the passenger for the purpose of the journey, and not intended for other persons, nor for sale." " Sample baggage consists of baggage for the commercial as distinguished from the personal use of the passenger and is restricted to catalogues, models, and samples of goods, wares or merchandise, in trunks or other suitable containers, tendered by the passenger for checking as baggage to be transported on a passenger train or boat, for use by him in making sales or other disposition of the goods, wares or merchandise represented thereby."

Plaintiff, when he checked his trunk, was asked by the baggagemaster as to its contents. His answer was that

it contained linens and laces. He was asked what he was going to do with the merchandise. His answer was that he " was selling it on the road." No other information as to the nature of the sales was either given or requested. The merchandise was stated to have a value of $2,500, and a charge for excess value in that amount was paid. Upon payment being made, the trunk was accepted by the defendant for transportation as baggage, and the usual baggage check was handed to the passenger.

" Personal " baggage by concession the trunk was not. There was no purpose on the plaintiff's part to use the contents for himself. " Sample " baggage it was not, for the merchandise was not representative of other merchandise to be sold, but was itself a stock in trade. The queries by the baggagemaster left the fact in that regard uncertain, but the character of the expected sales was brought out upon the trial. We are to say whether transportation was at the risk of the passenger by reason of the error.

The answer is supplied us by a rule of the defendant's tariff filed with the Interstate Commerce Commission in accordance with the statute.

By rule 19 of the defendant's tariff: " When passengers fail to disclose nature of articles offered for checking and it develops *en route* or at destination that the transportation of such articles as baggage is not authorized herein, collection will be based on double the excess baggage rate for gross weight, minimum charge sixty (60) cents."

The meaning of that rule is this, that where articles not properly baggage are received or transported as such through excusable mistake and not with fraudulent design to circumvent the law, the passenger shall pay for his error double the normal rate, and the contract, penalized, shall stand.

The rule, in thus providing, makes allowance for the venial and expected blunders of ignorance and innocence. Lawyers can draw a line of division between freight on

the one hand and baggage on the other, though not even lawyers can draw it always with facility and precision. The layman untrained in such distinctions must be forgiven his bewilderment. If the baggage to be carried is classified as "personal," he must separate the articles requisite for use upon the journey from those requisite for use when the journey is at an end (*Dexter* v. *Syracuse, etc., R. R. Co.*, 42 N. Y. 326; *Humphreys* v. *Perry*, 148 U. S. 627). If the baggage is classified as "sample," he must separate the things that he is carrying for purposes of sale from things carried for sale as representative of a larger stock. There is opportunity in such discriminations for honest misconception. The law has said through this rule what the consequences shall be. The bailment is preserved, but the money penalty is paid.

There is a point up to which this conclusion is accepted without dissent. In the view of the minority of the court, the plaintiff might recover if he had been silent as to the contents of the trunk when he checked it at the station. The argument is that by speaking he took himself without the rule, since the nature of the articles was thus disclosed at the beginning. One may question a construction of the tariff that lays a premium upon reticence. No doubt, in the vast majority of cases, a baggagemaster, if informed at the beginning as to the articles to be carried, will know whether they are baggage, and will reject them unless they are. This does not mean, however, that if he makes a mistake, the consequence is to be worse for a passenger acting in good faith than if disclosure has been delayed till the trunk is on its way. Indeed, the penalty in fairness should be not more rigorous but less, if distinction there is to be between the one case and the other. A passenger so misled has the added excuse of reliance on an assurance of regularity by one whose experience and knowledge may be presumed to be superior. There is no reason to believe that the rule ignores and reverses these distinctions of degree. The decisive point of time

is not when information is imparted. It is the time of understanding. We are to look to the moment when there was recognition or appreciation of the fact that the goods were not baggage, though the belief that they were may have been due to misconception of the law. Then and only then " it develops * * * that the transportation of such articles as baggage is not authorized herein " (Rule 19). The test is knowledge of the classification appropriate to the thing delivered, not knowledge merely of the facts from which classification would be possible for experience and wisdom.

The bailment would thus stand, subject to the burden of the penalty, though the nature of the articles had been disclosed to the baggageman at the beginning of the transit. If the contrary be assumed, however, disclosure to vitiate the bailment must be distinct and unequivocal, unless indeed there has been fraud, which in the case now before us is not suggested by the record. The facts must have been so stated that there was no room for misconstruction as to the legal inferences that flow from them. All that appears here is the plaintiff's statement to the baggagemaster that the merchandise which he was checking as baggage was to be sold upon the road. This without more left its quality indeterminate. The tariff is explicit that samples may be sold by the passenger and retain their quality as baggage if they are sold as representative of other goods, as samples of a stock (cf. *Jewelers' Prot. Union* v. *P. R. R. Co.*, 36 I. C. C. 71). The baggagemaster did not ask, and was not told, whether the sale of these goods was for one purpose or another. Perhaps he did not know that the distinction made a difference. Perhaps, if he did, he took it for granted that the sale was to be consistent with the representation by the passenger, a representation implied if not express (*Humphreys* v. *Perry, supra*, at p. 640), that the trunk was " sample " merchandise. His fault in reality was in failing to press the inquiry and ascertain whether the putative samples

were such in very truth or were themselves a stock in trade. We cannot say as matter of law that from the facts as they were disclosed to him, he should have known then and there that the things to be carried were not baggage but something else.

In these circumstances, *N. Y. Central R. R. Co.* v. *Goldberg* (250 U. S. 85) gives the applicable rule. Goldberg shipped a case of furs, marking them as such. His representative signed a bill of lading describing them as drygoods, for which there was a lower rate of carriage. " The misdescription was the driver's mistake, not made with any intent to fraudulently misrepresent the nature of the merchandise shipped " (p. 86). The court refused to uphold the contention of the railroad company that the effect of the misdescription was to relieve it of liability altogether. In making this decision, there was reliance upon a condition in the bill of lading filed in accordance with the statute. " If upon inspection it is ascertained that the articles shipped are not those described in this bill of lading, the freight charges must be paid upon the articles actually shipped." The effect of this condition was held to be that a misdescription of the goods, " not attributable to fraud," laid the burden on the shipper or the consignee to pay the added charge, but threw the burden on the carrier in the event of failure to deliver (cf. *Merchants' Cotton Press, etc., Co.* v. *Ins. Co. of No. Am.*, 151 U. S. 368).

There is nothing to the contrary in *Humphreys* v. *Perry, supra*, a case arising in 1885, before the regulatory acts of Congress, and involving only a question of liability at common law. The question to be determined here is the meaning and effect of the schedules and rules of a statutory tariff. We are to say whether they evidence a purpose that upon payment of a penalty there shall be confirmation of the bailment unless made by the bailor with fraudulent intent. Schedules and tariffs have rendered obsolete to some extent the perils

to which carriers were subject in former days through confusion between freight and baggage. Jewelry unnecessary for the journey might once have imposed a crushing liability if the carrier receiving it without knowledge of its character had been held to a duty to carry it in safety. Now there are standing provisions in the schedules of the tariffs whereby liability is limited to a sum that is moderate, or even nominal, in default of statement of the value. The evil to be avoided in these days is not so much prejudice to the carrier as prejudice to shippers if facilities of transportation withheld from the many are granted to a few. This evil is avoided by the imposition of a higher rate when the delivery as baggage is the result of honest error, and the annulment of the contract when the purpose accompanying delivery is furtive or illicit. If there is need of other sanction, amendment of the tariff is competent to set the mischief right.

The judgment should be affirmed with costs.

KELLOGG, J. (dissenting). The plaintiff purchased a ticket for an interstate journey upon the railroad of defendant. For transportation to his destination he delivered to the defendant a trunk to be checked as baggage. The baggagemaster asked him what the trunk contained; he replied " linens and laces." Asked what he did with the merchandise, he answered that he " was selling it on the road." He placed a valuation of $2,500 upon the merchandise and paid a charge of $2.40 for the excess value. The agent accepted the trunk as baggage and delivered a check therefor to the plaintiff. On arrival at destination the plaintiff presented the check to obtain the trunk. The trunk could not be found; it had been lost or stolen. This action was brought to recover the sum of $2,500, the valuation figure which had been placed upon the trunk.

The Interstate Commerce Act, section 6, paragraph 7, provides that no carrier shall engage in the transportation

of persons or property " unless the rates, fares, and charges upon which the same are transported by said carrier have been filed and published; " that no carrier shall " extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs."

The defendant, in accordance with the act, filed its tariff schedules with the Interstate Commerce Commission and duly published the same. These schedules or rules make provision governing the transportation of passengers' baggage. Rule 1 provides that baggage checks will be issued for authorized articles only when the owner is a passenger over the same line to the same destination as that of the baggage or beyond. Rule 4 defines baggage to be either " personal " or " sample." Personal baggage consists of articles in actual use and necessary for the wear, comfort and convenience of the passenger for the purposes of his journey. " Sample baggage consists of baggage for the commercial as distinguished from the personal use of the passenger and is restricted to catalogues, models, and samples of goods, wares or merchandise, in trunks or other suitable containers, tendered by the passenger for checking as baggage to be transported on a passenger train or boat, for use by him in making sales or other disposition of the goods, wares or merchandise represented thereby."

Concededly, the linens and laces, contained in the plaintiff's trunk, were not personal baggage. While the point is not conceded, it seems equally clear that they were not " sample baggage." The plaintiff informed the baggagemaster, as to the merchandise contained in the trunk, that he was " selling it on the road." Upon the trial, he was asked what he purposed to do with the merchandise, and he replied " to sell it on the road." The burden was clearly upon the plaintiff, who sought recovery for the breach of a contract to carry baggage, to prove that he had delivered *baggage* for carriage to the

defendant. This he did not do. If baggage at all, it must have been " sample " baggage. It was not such baggage, since no proof was given that the merchandise delivered by the plaintiff was designed " for use by him in 'making sales or other disposition of the goods, wares or merchandise represented thereby." The things which the trunk contained were not representative of other merchandise to be sold; they were themselves the merchandise to be sold.

The plaintiff contends that the provisions of section 6, paragraph 7, of the Interstate Commerce Act apply to freight but not to passenger's baggage. It has been held otherwise. (*Boston & Maine R. R. Co.* v. *Hooker*, 233 U. S. 97.) In that case a passenger sought to recover the full value of checked baggage which had been lost in transit. The tariff schedules ' limited the carrier's liability for lost baggage to $100, unless a greater value had been declared. The passenger had not declared an excess value. It was held that a recovery of more than the sum of $100 might not be had, since the carrier was forbidden by paragraph 7 of section 6 of the act from extending to any shipper or other person any facility or privilege not specified in the filed tariffs. To the same effect is *Galveston, H. & S. A. R. R. Co.* v. *Woodbury* (254 U. S. 357).

The plaintiff contends that he may recover upon a special agreement made between himself and the baggage-master, representing the defendant, that for the extra charge of $2.40 the defendant would carry the merchandise as sample baggage. The baggagemaster was powerless to make the special agreement. (*Chicago & Alton R. R. Co.* v. *Kirby*, 225 U. S. 155.) There, the owner of high grade horses in Springfield, Ill., desired to rush them to New York city, that they might be offered for sale at an impending sale at Madison Square Garden. The agent agreed that, if the plaintiff would load them on a car of the defendant before a specified hour, the car would be hauled to Joliet, Ill., in time to be connected up with the

fast freight train for New York, known as the "Horse Special." The plaintiff loaded as required. The defendant failed to deliver the car at Joliet in time to join the "Horse Special." As a result, the plaintiff was unable to exhibit his horses for sale at the New York auction. It was held that the agent was without power to make the special contract for speedy delivery, since the filed tariffs extended no such privilege to shippers generally. Therefore, a recovery was denied. The same holding was made in *Atchison, T. & S. F. Ry. Co.* v. *Robinson* (233 U. S. 173).

The plaintiff contends that the defendant, if not liable on a contract to carry, was liable as a bailee for its negligence in not caring for the trunk. The difficulty is that the baggagemaster was not authorized to receive the trunk for any purpose, and, therefore, the defendant entered into no contract of bailment. (*First Nat. Bank* v. *Ocean Nat. Bank*, 60 N. Y. 278, 287.) In the case cited the cashier of the defendant, without authority, accepted bonds belonging to the plaintiff for safekeeping. No charge for the service was to be made. The bonds were lost when the defendant's safe was burglarized. It was held that there could be no recovery by the plaintiff. The court said: "The duties and obligations of a bailee cannot be thrust upon one against his consent, but must be voluntarily assumed by the party himself, or some authorized agent, as in every obligation founded upon contract express or implied." Again it said: "If there was no bailment to the corporation it neglected no duty, and was guilty of no negligence. The whole duty of a bailee rests upon contract, and if there was no contract there was no duty." In *American Railway Express Co.* v. *Levee* (263 U. S. 19) it was said by HOLMES, J., concerning an effort of a shipper, who lost goods in transit, to avoid a limitation of liability provided for in the carrier's receipt, by suing in tort rather than in contract: "The effect of the stipulation could not have been escaped by

suing in trover and laying the failure to deliver as a conversion if that had been done." So here, at least in the absence of proof of gross or active negligence, a recovery in tort is unavailable, in lieu of a recovery upon a contract of carriage or bailment, when the latter, due to lack of power in the agent, would necessarily fail.

Rule 19 of the defendant's tariffs reads: " When passengers fail to disclose nature of articles offered for checking and it develops *en route* or at destination that the transportation of such articles as baggage is not authorized herein, collection will be based on double the excess baggage rate for gross weight, minimum charge sixty (60) cents." The rule does not apply, for this is not a case where a passenger has failed " to disclose nature of articles offered for checking." The plaintiff fully disclosed the nature of the merchandise offered.

The case of *New York Central R. R. Co.* v. *Goldberg* (250 U. S. 85) does not help the plaintiff. There, furs were innocently shipped by the owner as dry goods, taking the freight rate for the latter, which was one-half the rate for the former. The furs were stolen in transit, and a recovery was allowed. The bill of lading provided: " If upon inspection it is ascertained that the articles shipped are not those described in this bill of lading, the freight charges must be paid upon the articles actually shipped." The court held that this provision was exclusive in its imposition of a penalty upon the shipper, and that by implication therefrom the contract of carriage in the particular instance received sanction.

The case of *Humphreys* v. *Perry* (148 U. S. 627) seems conclusive upon this issue. There a passenger checked as baggage a trunk containing a stock of valuable jewelry designed to be sold. The train was wrecked and the jewelry lost or stolen. It was held, on common-law principles, that jewelry designed for sale did not constitute baggage, and there could be no recovery upon the contract to carry it as such. Here, we have a statute

which forbade the carrier to "extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs." The tariffs made no provision for the carriage of merchandise to be sold as passenger's baggage. The promise impliedly made by an unauthorized agent, so to carry the merchandise of the plaintiff, was forbidden by the statute to be made. There can be no recovery upon the void promise.

The judgment should be reversed and the complaint dismissed.

POUND, CRANE and LEHMAN, JJ., concur with CARDOZO, Ch. J.; KELLOGG, J., dissents in opinion in which O'BRIEN and HUBBS, JJ., concur.

Judgment affirmed.