**KRATINA v. SOUTH ATLANTIC S. S. CO.**
**The TULSA.**
**No. 37.**

District Court, S. D. Georgia,
Savannah Division.
July 17, 1941.

Garan, Walsh & Bernstein, of Savannah, Ga., for plaintiff.

A. R. Lawton, Jr., and Lawton & Cunningham, all of Savannah, Ga., for defendant.

RUSSELL, District Judge.

Plaintiff's agent delivered to defendant's ship "Tulsa" at Hamburg, Germany, in good order two cases referred to in the bill of lading as "used removal goods," the bill of lading being expressly issued subject to all terms of the United States Carriage of Goods by Sea Act, 46 U.S.C.A. § 1300 et seq. One of the cases was safely lowered from the lighter to the hold of the "Tulsa" and while the other was being lowered into the hold the swivel of the ship's Liverpool Cargo Hook broke, dropping the heavier case on the one already stored and damaging the contents of both in an alleged amount of more than Five Thousand Dollars. Plaintiff having failed to declare the value of the goods, upon the trial it was conceded she could not in any event recover more than Five Hundred Dollars per package.

Defendant denied liability upon four (4) grounds: (a) that it exercised due diligence when it purchased the hook from a reliable dealer, and when the hook was not used until it had been annealed and tested by the British Government, and thereupon urges exemption from liability as provided in Section 1304(1) of the Act; (b) having shown that the hook had a "latent [defect] not discoverable by due diligence" it is further exempted from liability under the terms of Section 1304(2) (p); (c) that it had carried the burden of showing that the damage arose without its actual fault or privity, and without the fault or neglect of its agents or servants, and it is therefore exempted under the provisions of Section 1304(2) (q); and (d) that it can not be held liable because of the provisions of the last paragraph of Section 1304(5), it being claimed that the plaintiff knowingly and fraudulently misstated the nature or value of the goods in the bill of lading.

For the purpose of the case it may be conceded that the defendant carried the burden of showing that it had used due diligence in the purchase of the Liverpool Cargo Hook. However, under all the evidence in the case the defendant failed to carry its burden of showing that the damage resulted from a latent defect. This for the reason that in attempting to show the exercise of due diligence in equipping and supplying the ship, the defendant proved that the hook had been in use and had been tested and a certificate obtained showing that it was safe for a working load of 3½ tons. Proof was offered that the hook broke as a result of a defective welding, but in view of the evidence it does not follow that the defective welding alone was the cause of the damage. This for the reason that apparently, if the defective welding was responsible, the hook would have broken when tested or while in heavy use. It does not appear that there was any gradual disintegration of the hook, but rather a sudden breaking.

Furthermore, the hook did not break when the first case, weighing 3.3. English Tons, was loaded immediately before the one weighing 3.44 tons which fell. In view of the tests and the use to which the hook had been subjected, and which it had withstood, I am not convinced that the defective weld alone was responsible for the breaking of the hook.

Furthermore, for the above reasons, and in view of physical evidence, and the expert testimony as to the amount of greatly increased load which may result in impact in lifting an object and moving it from one place to another with the consequent swinging and then lowering of the object, I am not persuaded that the defendant satisfactorily showed that the damage was not due to the fault or neglect of the Mate of the ship. While he testified positively that all care was used, the evidence relating to impact and the fact that it so greatly varies as a result of "factors present at the time of operation," as well as the reasons above stated and the evidence of physical facts, prevents the Mate's evidence from satisfactorily disclosing that the damage was not caused by his fault. Especially is this true when as in the present case, the actual load on the hook was only

140 pounds less than the safe working load. It appears from the evidence it is practically impossible to lift, swing and lower any object weighing 7716 pounds without increasing the load more than 140 pounds. It can not be doubted that in these circumstances the defendant has failed to show that the damage was caused solely by a latent defect and without the fault of its servant.

■ In employing the term "used removal goods" as descriptive of usual household furniture, silverware, etc., and when no value was stated, the shipper did not knowingly and fraudulently mistake the nature or value of the goods so as to relieve the carrier from responsibility. Especially is this true when the carrier because of the failure of the shipper to declare the nature and value of such goods is liable only for the statutory specified amount, though the actual damage is much greater.

### Findings of Fact

■ 1. This Court has jurisdiction of this case by reason of diversity of citizenship of the parties and the sum bona fide claimed being more than Three Thousand Dollars.

2. On or about February 11, 1939, the agent of plaintiff delivered to the defendant's s/s "Tulsa" at Hamburg, Germany, in good order two cases referred to in the bill of lading as "used removal goods," the bill of lading being expressly delivered subject to all terms of the United States Carriage of Goods by Sea Act. The loading and transportation of said goods were covered by such Act.

3. The goods in each case, known as Numbers 401 and 402, were damaged in an amount in excess of $500 each as the result of the fall of Case. No. 402 on No. 401 while No. 402 was being lowered into the hold of the ship, No. 402 falling as the result of the breaking of the swivel which was a part of what is known as a Liverpool Cargo Hook, being used to lower the cases after they had been lifted from a lighter alongside the "Tulsa," swung overboard and then to be lowered into the hold. The hook had a welded swivel and parted at the weld. This was a latent defect and not discoverable by the use of due diligence.

4. The Cargo Hook had been certified after tests as having had applied to it a proof load of seven tons and was certified for a safe working load of three and one-half tons, and the weight of the case of goods which fell by reason of the breakage of the Cargo Hook was 3.44 tons, only 140 pounds less than the safe working load.

5. The evidence showed that defendant used due diligence in the purchase and supply of the Cargo Hook.

6. The evidence fails to show that the latent defect in the hook was the cause of the damage to the contents of the cases.

7. The evidence does not show that the fault or neglect of the servants of the carrier did not contribute to such damage.

8. In employing the term "used removal goods" in the bill of lading as descriptive of usual household furniture, silverware, etc., being shipped from Germany to America, when no value was stated, the shipper did not knowingly and fraudulently misstate the nature or value of the goods.

9. In the lifting of an object of such weight vertically from a lighter alongside the shipboard and the swinging of the load over the deck of the ship until it reached a point above the hatch where it is to be lowered, the strain would be increased, the degree of increase depending upon the manner in which it is so moved but in any case will exceed 140 pounds additional to the dead weight and would in such case amount to more than the weight certified as a safe-working load.

### Conclusions of Law

1. Defendant has failed to bring its defense within the terms of Section 1304(2)(p), in that it is not shown that the damage resulted from the latent defect.

2. Defendant has failed to show exclusion from liability under Section 1304(2)(q).

3. Plaintiff is entitled to recover of defendant the sum of $1,000 together with interest thereon from the date of the filing of the suit and costs of suit.

Judgment is hereby rendered in favor of plaintiff and against defendant for the sum of $1,000, together with interest thereon from the date of the filing of the suit at 7% per annum, and costs of suit.