JOHN M. HARTZBERG et al., Copartners Doing Business under the name of J. & L. HARTZBERG, Plaintiffs, *v.* NEW YORK CENTRAL RAILROAD COMPANY, Defendant.

Supreme Court, Trial Term, New York County, March 23, 1943.

*Jóseph M. Proskauer, Charles Trynin* and *Henry H. Shepard* for plaintiffs.

*C. Austin White, Harold G. Wilson* and *Clive C. Handy* for defendant.

BOTEIN, J. This is an action brought by a firm of wholesale diamond dealers against a railroad carrier to recover the value of the contents of a jeweler's sample trunk, allegedly lost through the negligence of the carrier. The suit, by stipulation, was tried without a jury and the parties waived findings of fact and conclusions of law.

At 6:20 P. M., on June 17, 1941, the plaintiffs' trunk was delivered by a local transfer company to the baggage room of the

defendant's railroad station at Detroit, Michigan. There was no disclosure to the baggage-room attendant, nor was there any inquiry by him, concerning the nature or value of the contents of the trunk. He knew that it was a sample trunk, for he so described it on the receipt which he gave to the employee of the transfer company. The plaintiffs' trunk was a jeweler's combination wardrobe and sample trunk, somewhat distinctive in appearance and of a type in widespread use by jewelry salesmen. The aforementioned receipt contained a proviso that '' Baggage liability is limited in accordance with tariff regulations. Excess valuation will be subject to charge of 10 cents for each $100.''

Following issuance of the receipt, the trunk was deposited behind a weighing scale in the baggage room, some twenty-three feet from an opening adjacent to a courtyard. The trunk did not remain continuously within the range of vision of defendant's baggage-room employees, who were engaged after 6:20 P. M. in the performance of their routine duties. At about 7 P. M. one of these employees heard a noise, ran out of the baggage office and saw a car with a trunk projecting from the rear compartment draw away from the courtyard into the adjoining public thoroughfare.

The trunk had been used by plaintiffs' salesman, one Brodie, in traveling and selling plaintiffs' line of wholesale jewelry. It contained, in addition to some clothing belonging to Brodie, jewelry valued at $169,078.47, in which amount the plaintiffs seek damages. The plaintiffs allege four causes of action, all stemming from alleged breach of defendant's duties as bailee.

The defendant has asserted five separate defenses. The first two defenses rely upon rules of a tariff filed by the defendant with the Interstate Commerce Commission and the Michigan Public Service Commission and attempt to *exculpate* the defendant from all liability, on the ground that the tariff prohibits the transportation of jewelry as baggage and provides that the same shall be at owner's risk if delivered to a common carrier. The third and fourth defenses, likewise based upon tariff provisions, seek to *limit* the defendant's liability for loss to $126.67, alleging a failure of plaintiffs' agent to declare a higher value for the trunk and to pay the excess valuation charge. The fifth defense alleges that the plaintiffs, having been indemnified fully by an insurer, are not the real parties in interest.

The fifth defense merits no extended consideration, for it has been met fully and overcome by the introduction into evi-

dence of a " loan receipt " executed by the plaintiffs to an insurance company. Reimbursement for loss by an insurer, pursuant to a " loan receipt " similar in substance to the óne executed by the plaintiffs herein, does not disqualify a party, as the real party in interest, from prosecuting an action to recover for such loss. (*Luckenbach* v. *McCahan Sugar Refining Co.*, 248 U. S. 139; *Adler* v. *Bush Terminal Co.*, 161 Misc. 509, affd. 250 App. Div. 730.)

The plaintiffs seek to avoid the applicability of the defendant's first four defenses by contending, among other things, that the defendant's liability is that of a bailee or warehouseman in intrastate commerce in Michigan, rather than that of a common carrier engaged in interstate commerce. Under Michigan law, which would govern if plaintiffs' contention is correct, they assert that the defendant is liable as bailee for the full value of the trunk and contents lost or stolen by reason of defendant's negligence. This contention requires, for its resolution, a more detailed consideration of the testimony relating to the events preceding the delivery of the trunk to defendant's baggage room.

Brodie, plaintiffs' salesman, while in the final stages of a selling itinerary from California to New York, arrived in Detroit on June 14, 1941, and engaged a room in the Statler Hotel. He pursued his usual sales activities in Detroit until June 17th, when, his business having been concluded, he prepared to journey to Cleveland, Ohio, the next destination on his route. He reserved space, through the facilities of the Statler Hotel, upon defendant's train scheduled to leave Detroit for Cleveland at 12:15 A. M., on June 18th. He requested the Statler Hotel, through its porter, to arrange for delivery of plaintiffs' trunk to the baggage room of defendant's depot in Detroit, where, as hereinbefore described, the trunk was delivered about six hours prior to the time scheduled for the departure of his train. Concededly, it was Brodie's intention to present himself at the baggage room, prior to train time, exhibit his train ticket and the trunk receipt, and check the plaintiffs' trunk through from Detroit to Cleveland as baggage upon his passenger ticket without declaration of contents or of excess value. The intervening theft of the trunk alone aborted the progress of these clearly defined plans.

The applicability of the Federal statute governing " transportation " by carriers from one State to another [U. S. Code, tit. 49, § 1 *et seq.*], better known as the Interstate Commerce Act, and of the tariffs filed by the defendant pursuant to its

provisions, depends necessarily upon a preliminary determination of the interstate character of the transportation.

"Transportation", as the word is used in the statute, has a meaning broader in scope than attaches to its ordinary usage, for it is defined as including "the receipt, delivery, * * * storage, and handling of property transported" [§ 1, subd. (3), par. (a)]. This definition, in and of itself, would indicate that interstate transportation of property, in the contemplation of the statute, includes within its intendment every phase logically or reasonably connected with such transportation of property, from the time of its initial delivery to the carrier to its final redelivery to the passenger. This viewpoint is supported by text writers and the reported cases.

It is stated in *Pennsylvania R. R. Co.* v. *Public Utilities Comm. of Ohio* (298 U. S. 170, 175) that for the purpose of determining the applicability of the Interstate Commerce Act. interstate "transportation begins * * * when the merchandise has been placed in the possession of a carrier." (See, also, 5 Elliott on Railroads [3rd ed.], § 2512, pp. 322–324; 1 Hutchinson on Carriers [3rd ed.], § 113, p. 110; *Missouri Pacific Ry. Co.* v. *McFadden,* 154 U. S. 155, 160, 161; *Saffa* v. *Illinois Central R. R. Co.,* 218 Mo. App. 502.) The fact that delivery of merchandise or baggage to the carrier precedes the purchase of the ticket for interstate transportation, or that the loss occurs prior to such purchase, does not alter the interstate character of the transportation. (*Williams* v. *Central R. R. Co. of N. J.,* 93 App. Div. 582, affd. 183 N. Y. 518; 4 Michie on Carriers [1915], §§ 3448, 3450.) Hutchinson on Carriers, Volume 3 (3rd ed., § 1281, p. 1524), states: "The passenger has the right to deliver his baggage to the carrier such time before the starting of the train upon which he intends to take passage as may be reasonably necessary for obtaining a ticket and checking the baggage. From the time delivery is thus made, the carrier will be responsible for its safety as a common carrier." Once interstate transportation has begun, it continues and its applicable rules will govern liability for loss of baggage at an intermediate, albeit a wholly intrastate, point of interruption (*Franklin* v. *Southern Pacific Co.,* 203 Cal. 680, certiorari denied 278 U. S. 621; *Swift and Co.* v. *United States,* 196 U. S. 375) and after arrival at a wholly intrastate point of destination (*Cleveland, C., C. & St. L. Ry. Co.* v. *Dettlebach,* 239 U. S. 588; *Southern Railway Co.* v. *Prescott,* 240 U. S. 632).

The essential character of the commerce and not its mere accidents should determine. (*Texas and New Orleans R. R. Co. v. Sabine Tram Co.*, 227 U. S. 111, 126.) In essence, " The question is not one of form, but of actuality ". (*Southern Railway Co. v. Prescott*, 240 U. S. 632, 639, *supra*.) In actuality plaintiffs' trunk was delivered to defendant's baggage room for transportation in interstate commerce from Detroit, Michigan, to Cleveland, Ohio, as baggage, upon a passenger ticket which had been reserved for plaintiffs' salesman.

Both the actuality of the situation and the interpretation of the scope of interstate transportation, within the meaning of the Interstate Commerce Act, blend into a determination that plaintiffs' trunk was in interstate transportation from the time of its delivery to defendant's baggage room. Such conclusion, of necessity, eliminates from any consideration herein the public policy or law of the State of Michigan, for the enactment by the Federal Government of the legislation regulating interstate commerce excludes thereafter any State's power to control such commerce. (*Adams Express Co. v. Croninger*, 226 U. S. 491; *Kansas City Southern Ry. Co. v. Carl*, 227 U. S. 639; *Wells, Fargo & Co. v. Neiman-Marcus Co.*, 227 U. S. 469; *Missouri, Kansas & Texas Ry. Co. v. Harriman*, 227 U. S. 657.) Accordingly, the defendant's liability for the loss must be resolved by the provisions of the Interstate Commerce Act, the defendant's tariff rules filed pursuant thereto, and the decisions interpreting and applying the same.

The defendant relies upon these provisions and rules, and seeks, by its first and second defenses, to exonerate itself from all liability for the loss of plaintiffs' trunk. These defenses are based upon sections of the defendant's filed tariff which prohibit passengers from enclosing jewelry in baggage under the penalty that the carrier shall not be responsible for loss or damage thereto and that all risk for the same shall be that of the passenger. (Tariff BG No. 8, I. C. C. No. 211, effective June 1, 1940, rules 4 and 9.)

Subdivision (11) of section 20 of the Interstate Commerce Act (U. S. Code, tit. 49) provides, in substance, with respect to property, that any carrier in interstate commerce " shall be liable * * * for any loss, damage, or injury to such property caused by it * * * and no contract, receipt, rule, regulation, or other limitation of any character whatsoever shall *exempt* such common carrier * * * from the liability, hereby imposed ". (Italics supplied.)

This section clearly prohibits any carrier, by any means whatsoever, from exempting itself from all liability for loss of or damage to property transported by it. Yet the defendant, by invoking its tariff rules 4 and 9, *supra,* seeks to achieve precisely that, namely, to exempt itself from all liability because jewelry was enclosed in plaintiffs' baggage in violation of said rules designating jewelry as prohibited articles not to be enclosed in baggage. As the aforementioned rules themselves violate the mandate of subdivision (11) of section 20 of the Act, to the extent of the penalty they seek to impose, they may not be given their intended effect of exempting the carrier from all liability.

This conclusion receives some collateral support from the generally accepted view that an innocent misdescription by passenger or shipper of the character or value of the goods shipped will not relieve the carrier of all liability, but the carrier will remain liable to the extent of the character and value of the goods as so misdescribed. (See note, 23 L. R. A. [N. S.] 745, 746; note, L. R. A. 1915A, 502, 503; *Araje* v. *Pennsylvania R. R. Co.,* 251 N. Y. 354, affg. 225 App. Div. 73, revg. 130 Misc. 29; *New York Central R. R. Co.* v. *Goldberg,* 250 U. S. 85.)

On the other hand, the Interstate Commerce Act sanctions a carrier's limiting its liability for loss or damage to property transported as baggage to a declared or agreed value for the property, dependent upon rates fixed and charged, when just and reasonable [U. S. Code, tit. 49, § 20 subd. (11)]. The provisions of the defendant's tariff rules pleaded as the basis of its third and fourth defenses, and limiting liability to $100 for 150 pounds of baggage in the absence of a declaration of greater value and payment of excess charges (Tariff BG 8, I. C. C. No. 211, effective June 1, 1940, rules 9, 10, 11 and 14), are beyond cavil within the permitted purview of the Act.

Tariffs containing similar rules have obtained judicial recognition and approval of their intended effect in limiting a carrier's liability for loss of passenger baggage to the agreed or declared value set forth in the tariff in the absence of declaration of greater value and payment of excess charges. Such limitations have been sustained even when the loss has been occasioned by the negligence of the carrier. (*Boston and Maine R. R. Co.* v. *Hooker,* 233 U. S. 97; *Galveston, H., & San Antonio Ry. Co.* v. *Woodbury,* 254 U. S. 357.)

Such limitation of liability to a declared or agreed value with proper charges dependent thereon " has no tendency to exempt from liability for negligence." (*Hart* v. *Penn. R. R. Co.,* 112

U. S. 331, 340; see, also, *Kansas City So. Ry. Co.* v. *Carl,* 227 U. S. 639.) In such cases valuation agreements between passenger and carrier are given effect and sustained against the passenger, upon the theory of estoppel beyond the agreed amount. (*Union Pacific R. R. Co.* v. *Burke,* 255 U. S. 317; *Hart* v. *Penn. R. R. Co., supra.*) " The effect of the filing gives the regulation as to baggage the force of a contract determining ' Baggage liability '." (*Boston and Maine R. R. Co.* v. *Hooker, supra,* at p. 120.)

In order that a carrier may avail itself of the benefit of its assertion of limitation of liability to an agreed valuation, it must appear that a choice of rates was present so that the passenger or shipper might have secured full coverage or protection for his property by payment of a higher rate for the carriage. (*Union Pacific R. R. Co.* v. *Burke, supra,* at p. 321; *Boston and Maine R. R. Co.* v. *Piper,* 246 U. S. 439; *Cincinnati, New Orleans & Tex. Pac. Ry. Co.* v. *Rankin,* 241 U. S. 327.) That essential choice of rates is found in the defendant's tariff and would not have been denied to the plaintiffs had they sought to secure full coverage for their property by shipping the same as freight, which was its proper classification, by declaring correctly its contents and valuation, and by paying the charges graduated according to such declarations.

The provisions of sections 439 and 440 of the Civil Practice Act having been waived by the parties, the defendant's motion for judgment in its favor on its third and fourth defenses is granted. All other motions made or deemed to have been made by either party are denied. Judgment is accordingly directed in favor of the plaintiffs and against the defendant in the sum of $126.67, with interest thereon from June 17, 1941.