## LICHTEN v. EASTERN AIR LINES, Inc.
### Civ. No. 44-498.

United States District Court
S. D. New York.
Dec. 12, 1949.

See also, D.C., 8 F.R.D. 138.

Rein, Mound & Cotton, New York City, for plaintiff, John J. Tomich, New York City, of counsel.

Harold L. Russell, New York City, for defendant.

IRVING R. KAUFMAN, District Judge.

Defendant moves for summary judgment in its favor pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., on the ground that as a matter of law it is not liable to the plaintiff for the loss of the property alleged in the complaint. Plaintiff presents a cross-motion for summary judgment in its favor.

Defendant is a common carrier licensed by the Civil Aeronautics Board (hereafter referred to as the C.A.B.). On January 18, 1947, plaintiff purchased from defendant passage for herself and her baggage and was a passenger on that date on Flight 630 from Miami to Philadelphia. Plaintiff checked two bags with defendant but only one bag was delivered upon her arrival in Philadelphia. Plaintiff was informed that the other bag had gone forward in error to Newark Airport. The bag was subsequently delivered by defendant to plaintiff at Philadelphia on January 28, 1947.

Plaintiff alleges in her complaint as a first cause of action that three articles of jewelry valued at $3,187.95 were missing from the bag when finally delivered. As a second cause of action plaintiff alleges that defendant wrongfully delivered the bag to an unknown person at Newark Airport without proper identification, or surrender of a baggage tag, and accepted the return of the bag at some time thereafter from an unknown person without making a record of the identity of the person, and that the defendant thereby converted the missing jewelry to its own use.

■ Defendant denies knowledge or information as to the existence or value of the jewelry in the bag, or the alleged misdelivery of the bag, but concedes the existence of these facts for the purposes of its motion for summary judgment. Defendant does not admit the existence of the aforementioned allegations for the purpose of a ruling on plaintiff's motion. Plaintiff submits, however, that there is no substantial issue as to these facts and that defendant's liability can be established on the basis of the affidavits submitted. Defendant's motion will be considered first, since if that motion is granted, plaintiff's must necessarily fall; and both sides agree that there is no material fact in question for purpose of defendant's motion, and that only an issue of law is presented.

A preliminary matter which must be disposed of is the question of jurisdiction raised by the defendant.

■ Plaintiff alleges in her complaint that she is a citizen of the State of Pennsylvania and that defendant is a corporation organized under the laws of the State of Delaware and doing business in the State of New York, and that the cause of action concerns the loss of property valued at $3,187.95. These allegations are sufficient to satisfy the diversity of citizenship jurisdictional requirements. Defendant contests the jurisdiction on the ground that, as a matter of law, plaintiff allegedly cannot recover the requisite jurisdictional amount. However, it is the good faith of plaintiff's claim, and not the amount of recovery, which determines whether that requirement has been satisfied. St. Paul Mercury Indemnity Co. v. Red Cab Co., 1938, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed 845; Gray v. Blight, 10 Cir., 1940, 112 F.2d 696, certiorari denied, 1940, 311 U.S. 704, 61 S.Ct. 170, 85 L.Ed. 457; Kratina v. South Atlantic S. S. Co., D.C.S.D.Ga.1945, 63 F.Supp. 895. Plaintiff has in good faith presented a claim for a loss suffered by her in excess of $3,000; therefore the Court has jurisdiction over the case.

■ Furthermore a pleading that adequately discloses a present controversy dependent for its outcome upon the construction of a federal statute is one on which the district court can properly accept jurisdiction. Peyton v. Railway Express Agency, 1942, 316 U.S. 350, 62 S.Ct. 1171, 86 L. Ed. 1525. The present controversy falls within this category since the construction of the Civil Aeronautics Act of 1938, 52 Stat. 977, 49 U.S.C.A. § 401 et seq., is in question. Defendant previously raised the question of jurisdiction before Judge Ryan in its motion to dismiss the plaintiff's complaint, and Judge Ryan overruled the contention stating [8 F.R.D. 138, 139]: "It appears, from these allegations, that the transportation involved was interstate air transportation and that it is subject to the provisions of the Civil Aeronautics Act * * *."

Defendant's contention, in support of its motion for summary judgment, is that the transportation in question was governed by several tariffs filed by it with the C.A.B., which tariffs excluded or limited the liability of defendant.

Section 483 of Title 49 U.S.C.A., the Civil Aeronautics Act of 1938, § 403, provides for the filing, posting and publishing of tariffs by air carriers and requires that contracts of carriage shall correspond to such tariffs.

The Rules Tariff governing the transportation by defendant are contained in Local and Joint Passenger Rules Tariff No. PR-1, C.A.B. No. 4, issued by M. F. Redfern, Agent, on behalf of the defendant and other air carriers of the Air Traffic Conference of America. Paragraph 1(IV) of these Rules Tariff provide that "The provisions of this tariff * * *, including provisions as to liability, shall become a part of the contract of carriage."

The following are the pertinent sections of the Rules Tariff on the subject of liability for loss of baggage:

"Rule 10. Baggage and Personal Property. (II.)

"Articles Accepted as Baggage: Baggage shall consist only on(sic) wearing apparel, non-liquid toilet articles and similar effects for actual use which are necessary and appropriate for the comfort and convenience of the passenger for the purposes of the journey and not intended for other persons or for sale. Money, *jewelry*, silverware, samples, negotiable paper, securities and similar valuables or business documents will be carried only at the risk of the passenger. * * *. (Emphasis added.)

"III. Value of Baggage.

"(A) Liability for-General. Except as provided in Paragraph (C) below no participating carrier shall be liable for the loss of, or any damage to, or any delay in the delivery of, any property of the following types which is included in a passenger's baggage, whether with or without the knowledge of the carrier:

    fragile or perishable articles,
    money, *jewelry*, silverware,
    negotiable paper, securities, or
    other valuables, samples, or
    business documents;

or for any other loss or damage of whatever nature resulting from from any such loss, damage or delay * * * (Emphasis added.)

"(B) Liability for-Value. Except as provided in Paragraph (C) below the liability, if any, of a participating carrier for the loss of, or any damage to, or any delay in the delivery of, any baggage shall be limited to an amount equal to the actual value of such baggage, which shall be conclusively presumed not to exceed $100 for each fare-paying passenger, unless the passenger has, at the time of tendering such baggage for transportation, declared a higher value and paid an additional charge, at the rate of ten cents for each $100, or fraction thereof, by which such higher value exceeds $100, in which event the actual value of such baggage shall be conclusively presumed not to exceed such higher value * * *."

Since these Tariffs have been filed by defendant, unless they are unlawful or otherwise invalid, they must preclude or limit the liability of defendant for plaintiff's loss in this action.

There is no question that these Rules were within the authority conferred by the Civil Aeronautics Act and that they became a part of the contract between the carrier and the passenger. Mack v. Eastern Air Lines, D.C.Mass.1949, 87 F.Supp. 113; Jones v. Northwest Airlines, 1945, 22 Wash.2d 863, 157 P.2d 728. Section 483(b) of the Act, requiring that the provisions in the Rules Tariff be observed by both the carrier and the passenger, is derived from, and its language is substantially the same as Section 6(7) of the Interstate Commerce Act, Title 49 U.S. C.A. § 6(7). It is well established that a carrier's tariff on file with the Interstate Commerce Commission has an effect equivalent to law until declared unlawful by that Commission, and that the provisions of those tariffs establish the legal relationships of the parties. Western Union Telegraph Co. v. Esteve Bros., 1921, 256 U.S. 566, 41 S.Ct. 584, 65 L.Ed. 1094; Boston & Maine R. R. v. Hooker, 1914, 233 U.S. 97, 34 S.Ct. 526, 58 L.Ed. 868, L.R.A.1915B, 450, Ann.Cas.1915D, 593;

American Ry. Express Co. v. American Trust Co., 7 Cir., 1931, 47 F.2d 16. This is so, irrespective of the injured party's actual knowledge of the tariff provisions. Western Union Telegraph Co. v. Esteve Bros., supra.

Section 483(a) of the Civil Aeronautics Act provides in part that "Tariffs shall be filed, posted, and published in such form and manner, and shall contain such information, as the Board shall by regulation prescribe; and the Board is empowered to reject any tariff so filed which is not consistent with this section and such regulations."

Any person may file a complaint with the Board asking that any rule, regulation or practice be declared unreasonable or unlawful. Sec. 642(a). Furthermore, the Board may investigate such matters on its own initiative. Sec. 642(b). If the Board finds, after notice and hearings, that any rules, regulations or practices are unreasonable or unlawful, it may determine and prescribe lawful rules, regulations or practices. Sec. 642(d).

Hence it can be seen that any rules determining liability must be approved by the C.A.B. and are subject to being questioned by any party. The question of the reasonableness and legality of these rules is within the sole jurisdiction of the C.A.B. and the court is without jurisdiction to grant relief to a party until a finding has been made by the Board that the rules are unlawful, or until the party alleges that he has exhausted all his remedies before the Board. Jones v. Northwest Airlines, supra; Adler v. Chicago & Southern Air Lines, D.C.E.D.Mo. 1941, 41 F.Supp. 366; cf. American Airlines v. Standard Air Lines, D.C.S.D.N.Y. 1948, 80 F.Supp. 135. Judicial review of a determination of the C.A.B. is provided for in Section 646 of the Act.

The Rules Tariff involved in this case are not so voluminous that it might be said that the C.A.B. would have overlooked a provision in passing on the validity of the Rules,—especially as prominent a provision as that as to the liability for loss of baggage.

The C.A.B. must have considered the provision in question excluding liability, and determined that it was reasonable. It is true that the common law rule is that a common carrier can not contract itself out of liability for its own negligence. The Ansaldo San Giorgio I. v. Rheinstrom Bros., 1935, 294 U.S. 494, 55 S.Ct. 483, 79 L.Ed. 1016. However, aside from the fact that contractual obligations in this case are governed by the Civil Aeronautics Act, and not by common law or some other statute, Mack v. Eastern Air Lines, supra, there is another ·basic distinction which must be considered The common law rule stated above was usually applied in cases involving limitation of liability or valuation agreements which were held invalid as to known cargo, such cargo being the subject matter of a contract. In this case the "cargo" in question is jewelry, the presence of which the carrier was unaware, and which the carrier in its rules specifically did not desire to carry as cargo. The carrier only wished to carry passengers and acceptable baggage. Here the plaintiff seeks to make the carrier liable for something it did not know of, did not contract to carry and specifically carried at the risk of the passenger under its Rules Tariff; in short, the plaintiff seeks to force responsibility on the defendant for loss of an item it did not know existed.

The reason for the development of valuation agreements was to give the carrier the right to receive compensation commensurate with the risk taken by accepting the cargo for transportation. Boston & Maine R. R. v. Hooker, supra; Adams Express Co. v. Croninger, 1913, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314, 44 L.R.A.,N.S., 257. In this case, perhaps defendant exercised the proper duty of care commensurate with the keeping of a bag thought by it to be worth less than $100. However, had it known that it was under an obligation worth over $3,000 it could urge with propriety that other precautions might have been taken. It does not seem unreasonable for the defendant to require that a passenger carry such valuable items as jewelry at his own risk.

If this Court were to agree with plaintiff's contention, that excluding or limiting liability is unreasonable and unlawful, defendant and other carriers would be subject to endless claims, many undoubtedly fraudulent, against which the carriers would have little or no protection. Indeed, in many cases the carrier would have no way of ascertaining whether the article claimed as lost actually was carried. How, for example, could the carrier here verify that there was jewelry in the bag which was misdelivered. The necessity for safeguards against questionable claims was, in all probability, the practical rationale of the development of valuation agreements; a like rationale applies to the exclusion clause in this case.

In several cases decided under the Civil Aeronautics Act, the plaintiff has sued either on a theory of negligence or for breach of a special contract for loss caused by the airline due to a negligent delay en route, or to a cancellation of a scheduled flight. Mack v. Eastern Air Lines, supra; Jones v. Northwest Airlines, supra; Adler v. Chicago & Southern Air Lines, supra. In each case the Rules Tariff of the airline stated that the airline shall not be liable for such delay or refusal to transport, whatever may be the reason, whether due to negligence or otherwise. In none of the cases was the plaintiff permitted to recover.

In effect, these cases permitted the carrier to exclude itself from liability for negligent delay where it had formulated its regulations in accordance with the Civil Aeronautics Act requirements. This Court cannot see why, if a carrier can exclude itself from such liability even when caused by its negligence, it cannot do so as to jewelry lost due to negligence under the circumstances presented in this case.

Plaintiff relies on the case of Hartzberg v. New York Cent. R. Co., Sup.Ct.1943, 181 Misc. 129, 41 N.Y.S.2d 345, affirmed 1944, 268 App.Div. 904, 51 N.Y.S.2d 741; affirmed 1946, 295 N.Y. 703, 65 N.E.2d 337, certiorari denied 1946, 328 U.S. 849, 66 S. Ct. 1121, 90 L.Ed. 1622, for the proposition that the carrier cannot exclude itself in this case from liability. That case seems to the plaintiff to be directly in point since the plaintiff in that case also lost jewelry checked with a carrier due to the carrier's negligence, and the court held that under the Interstate Commerce Act, the carrier could not exclude itself from liability as attempted under its tariffs; plaintiff was permitted to recover, but recovery was limited to a sum of about $130 on a loss of jewelry amounting to some $169,000; this was due to a valuation clause in the tariff limiting liability which the court held valid and applicable.

However, the basis of the court's decision in that case was Section 20(11) of the Interstate Commerce Act, supra, 49 U.S.C.A. § 20(11), which provides that any carrier "shall be liable * * * for any loss, damage, or injury to such property, caused by it * * * and no contract, receipt, rule, regulation, or other limitation of any character whatsoever, shall *exempt* such common carrier * * * from the liability hereby imposed; * * *." (Emphasis added.) Therefore, the court held that Sec. 20(11) does not permit exemption from liability; however the court did uphold the limitation of liability as to the baggage, since it is specifically sanctioned by that Section.

There is no provision preventing exemption, similar to Sec. 20(11) of the Interstate Commerce Act, in the Civil Aeronautics Act. Since the Civil Aeronautics Act is modeled after the Interstate Commerce Act, it would seem that such a provision would have been included, if desired. However, whether omitted inadvertently or deliberately, a similar provision is *not* present in the Civil Areonautics Act and therefore exemption from liability is not forbidden.

Since the Rules Tariff of defendant do provide that it shall not be liable for loss of jewelry, and since these Rules are deemed to be approved by the C. A. B. and not in conflict with any provision of the Civil Aeronautics Act, they therefore form the contract between the parties and as a matter of law defendant is entitled to summary judgment in its favor.

■ However, several other questions were raised by the parties and the Court feels that they should be passed upon. The first question pertains to the validity of the limitation of liability to $100 as specified in Rule 10(III) (B) of defendant's Rules Tariff, unless a higher value is declared and an additional charge paid, where the defendant has been negligent. It is well settled that such valuation agreements are valid in general. American Ry. Express Co. v. Levee, 1923, 263 U.S. 19, 44 S.Ct. 11, 68 L.Ed. 140; Adams Express Co. v. Croninger, supra. Such a stipulation has been upheld where the defendant was negligent, Western Union Telegraph Co. v. Esteve Bros., supra; Kilthau v. International Mercantile Marine Co., 1927, 245 N.Y. 361, 157 N.E. 267; cf. Conklin v. Canadian-Colonial Airways, Inc., 1935, 266 N.Y. 244, 194 N.E. 692. The theory upon which such a stipulation has been applied in negligence cases is that it has no tendency to exempt from negligence, but merely sets an agreed valuation on the injured property which the plaintiff is estopped to deny. Union Pacific R. Co. v. Burke, 1921, 255 U.S. 317, 41 S.Ct. 283, 65 L.Ed. 656. The stipulation has been held valid even when the defendant has converted the goods of plaintiff. Georgia, Fla. & Ala. Ry. Co. v. Blish Milling Co., 1916, 241 U.S. 190, 36 S.Ct. 541, 60 L.Ed. 948; see Missouri Pacific R. Co. v. Boone, 1926, 270 U.S. 466, 468, 46 S.Ct. 341, 70 L.Ed. 688; cf. American Ry. Express Co. v. Levee, 1923, 263 U.S. 19, 44 S.Ct. 11, 68 L.Ed. 140. Hence, if there was any liability at all, the most the defendant carrier could be held liable for would be $100, even if it converted the bag and was negligent, since plaintiff made no declaration of the true value of her baggage at the time she tendered it for carriage, and paid no additional charge.

The case of Hartzberg v. New York Central R. Co., supra, upon which plaintiff relies, expressly held valid a limitation of liability clause similar to that in the instant case, even though the loss in that case was occasioned by the negligence of the defendant. Plaintiff seeks to distinguish that case on the ground that in the instant case the contract of carriage terminated at Philadelphia, and that the unauthorized carriage of plaintiff's baggage from Philadelphia to Newark allegedly was not governed by defendant's tariffs, either as the limitation of liability or the exclusion of liability.

■ This contention of plaintiff is based on the archaic theory that any negligence or deviation from the stated contract of carriage terminates the contract so that a defendant in an action can no longer rely on a limitation of liability clause in the contract. However, the theory has not been followed by Federal courts in cases arising under the Interstate Commerce Act, (e. g. the cases denying recovery even where the carrier was held to have negligently converted the cargo, cited supra) and with good reason. According to plaintiff's theory, any deviation from the contract or loss would make the valuation clause in the contract ineffective. If so, then the purpose of such a clause becomes reductio ad absurdum. If the carrier safely carries the cargo and delivers it to its owner at the termination of the journey, then a valuation clause is unnecessary. Only in case of a misdelivery, negligent injury, loss or similar misfortune does a valuation clause come into use. Hence the Federal courts have rightly held that the limitation of liability clause is designed for and does survive a breach of the contract of carriage.

■ Plaintiff puts emphasis in this case on the fact that the bag was carried beyond Philadelphia and delivered to the wrong party. However "transportation", as used in the Civil Aeronautics Act and as defined by Sec. 1(3) of the Interstate Commerce Act, 49 U.S.C.A. § 1(3), "includes within its intendment every phase logically or reasonably connected with such transportation of property, from the time of its initial delivery to the carrier to its final redelivery to the passenger." Hartzberg v. New York Cent. R. Co., supra, 41 N.Y.S.2d at page 349. This would seem to answer plaintiff's contention. It does not seem reasonable that a distinction should be made between a loss, Hooker and Levee cases, supra, or a misdelivery at the end of a journey, Blish case, supra, or allowing baggage negligently to be stolen, Hartzberg case, supra, on the one hand, and a misdelivery at a point not

on the route of carriage on the other. In all cases the carrier is at fault and should be permitted to protect itself. If this distinction were to be made, as requested by plaintiff, there would exist the anachronistic situation wherein the airline, by losing the baggage completely could not be held liable, but by returning the baggage to its owner after a misdelivery, it would be liable. This Court cannot make such a distinction, and the limitation or exclusion of liability must be held to apply to any situation arising out of the contract of carriage, and causing loss to the plaintiff.

Since as a matter of law, defendant is not liable to plaintiff, even admitting all the material facts alleged in plaintiff's complaint, defendant's motion for summary judgment is granted and plaintiff's motion accordingly denied.

Judgment for defendant.