Leonard L. Fine, J.
In this action, tried without jury, both sides have conceded that a certain piece of luggage containing certain items of personal clothing belonging to the plaintiff was lost by the defendant carrier while in the care of' the defendant carrier. The sole questions presented to the court are basically as follows:
1. "Whether a baggage receipt issued by the defendant carrier to the plaintiff passenger containing language limiting the carrier’s liability in the event of loss or damage to said baggage should be given absolute effect.
2. Whether the plaintiff should be precluded from asserting a claim in excess of the stated baggage liability limitation by reason of her failure to seek special freight rates for ordinary baggage as provided for by the tariff and rate regulations established by the Interstate Commerce Commission.
On the first issue raised, a strict and absolute reading of the “baggage receipt” language would operate as a limitation of the carrier’s liability. This, however, bares no novelty, in that established case law has been consistent with the result that the limitation will be enforced only when certain conditions are met. Accordingly, in that the printed ‘ ‘ quasi exculpatory ” language was neither called to the attention of the plaintiff, nor were the terms of said limitation assented to, an absolute reading of the restrictive language must yield to reason and practice and, as such, does not operate to bar recovery in excess of the stated limitation (Klar v. H. & M. Parcel Room, 270 App. Div. 538; Healy v. New York Cent. & Hudson Riv. R. R. Co., 153 App. Div. 516). It was similarly held in O’Brien v. Pennsylvania R. R. Co (184 F. Supp. 305, 308) “that the acceptance by the plaintiff of the claim check for the suitcases, under the circumstances, did not constitute a contract between the parties for the limitation of liability such as would limit the liability of the bailee for a loss arising from its negligence.” (See, also, 5 N. Y. Jur. Bailment, § 71.)
The second issue before the court is the one of prime and perhaps novel interest and to that extent requires a deeper examination.
The gravamen of defendant’s position is that, having paid a rate established by the Interstate Commerce Commission (one consideration of which being the limitation of defendant’s liability to a limited amount), the plaintiff would, in effect, be the recipient of a benefit for which no proper consideration would have been paid if it could recover an amount in excess of the recited limitation. The defendant carrier argues further that the plaintiff had a choice of rates in accordance with the *131 tariff and rate regulations established by the Interstate Commerce Commission (U. S. Code, tit. 49, § 20, subd. [11]) in that she could have shipped her baggage in the manner elected or that she could have secured full coverage and protection for her property by payment of a higher rate for said carriage upon a properly declared valuation. Defendant states further that it was at all times ready and willing to accept plaintiff’s baggage as “ freight ” with its commensurate additional rates but that plaintiff had failed to avail herself of said “ freight ” handling. As such, argues the defendant, plaintiff should be barred from asserting a loss in excess of the limit agreed to by both parties as set forth in the baggage receipt. In support of this position the defendant cites Hartzberg v. New York Cent. R. R. Co. (181 Misc. 129, affd. 268 App. Div. 904, affd. 295 N. Y. 703; cert. den. 328 U. S. 849).
Briefly stated the Hartsberg case concerned itself with a passenger who transmitted his baggage (which in fact was a salesman’s sample case) to the carrier in the usual manner and received the usual receipt with its usual language of limitation of liability. The contents of the lost baggage were unusual, however, in that they consisted of many samples of commercial jewelry and diamonds at the unusual value of $169,078.47.
In sustaining the defendant’s position, Mr. Justice Boteih held (p. 136) that the protection of the tariff rates and regulations ‘ ‘ would not have been denied to the plaintiffs had they sought to secure full coverage for their property by shipping the same as freight, which was its proper classification, by declaring correctly its contents and valuation, and by paying the charges graduated according to such declarations ” (emphasis supplied).
The application of Hartzberg v. New York Cent. R. R. Co. to the instant case would appear to be strained, in that here the subject baggage contained the usual items of a traveler’s wardrobe and not the commercial items of a merchant’s wares. The distinction with respect to “ proper classification ” of baggage which pervaded the learned court’s opinion in the Hartsberg case is a precise one and warrants no further interpretation. It would, therefore, violate reason and damage logic to charge the average traveler with the obligation of seeking special handling for its usual baggage by way of the “ freight rate ” route.
Hence, defendant’s contention that plaintiff should have shipped her ordinary baggage as freight is as fictitious as it is unrealistic. Almost all have been witness to airline, railroad or bus terminals with their hordes of travelers. These are *132 today’s terminals, inundated with mountains of luggage, fitting every size and description — luggage jostled over loaded trucks, bounced on moving carts, pushed under escalator tracks, trammeled with mobile rods, thrown against mechanical lifts and tossed by human hands. Terminals never sleep. There is no opening and no closing. The hurried movement of thousands throughout the day and night is a daily occurrence. The atmosphere of rush and crush is constant. It looms more ominous as travelers’ horizons grow and terminals’ size appear to diminish. Should the ordinary traveler suffer the loss of his property by reason of his failure to exercise an option of shipment which may exist in fact but is dormant in practice? Should a fiction that contradicts common sense, ordinary practice, and basic reason not yield to everyday usage?
Perhaps the whole concept of baggage handling, baggage liability and related tariff and rate regulations should be given a fresh appraisal by the legislative bodies charged with responsibility over these matters. In the interim, however, and notwithstanding the overwhelming problems that beset the carriers concerning baggage disposition, justice compels that the traveler be not placed at the mercy of giants who can conquer speed at 35,000 feet but appear to drag their feet at sea level. Justice compels further that the law be neither blinded nor distracted by unrealistic fictions or myths which seek to deny to the unwary public those rights for which correlative safeguards should be afforded.
Accordingly, and in the posture of this case I find that the plaintiff was wronged by reason of the negligence of the defendant and, as such, is entitled to judgment in the full amount as agreed to by stipulation.